TOMASITA HERNÁNDEZ CRUZ, apelante y recurrida, *v.* MARÍA SOCORRO LACOT, ETC., apelada y peticionaria.

*Número:* O-84-335      *Resuelto:* 27 de junio de 1986

Roberto Schmidt Monge, *Procurador General*, Carmen A. Bravo de Riefkohl, *Procuradora General Auxiliar*, abogados de El Pueblo; César R. Miranda Rodríguez, *abogado de la recurrida*.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

La recurrida Tomasita Hernández Cruz —empleada de carrera del Departamento de Instrucción Pública del Estado Libre Asociado de Puerto Rico por espacio de diez y siete años— fue declarada culpable y convicta del delito de homicidio voluntario (delito grave). Como consecuencia de ello, el Tribunal Superior de Puerto Rico, Sala de Caguas, la sentenció el día 31 de marzo de 1982 a cumplir, *bajo el régimen de libertad a prueba,* (¹) una pena de cuatro años de presidio. (²)

---

(¹) Ley Núm. 259 de 3 de abril de 1946, según enmendada, conocida como la Ley de Sentencias Suspendidas.

(²) Surge de la minuta que recoge los procedimientos habidos en dicho día ante el foro de instancia que el magistrado, al sentenciarla, expresó:

Mediante carta de fecha 14 de julio de 1982, la entonces Secretaria del Departamento de Instrucción Pública separó a la señora Hernández Cruz del cargo de Oficinista Dactilógrafo III, que hasta ese día venía ocupando en el referido departamento. La citada decisión, según la misiva de la Secretaria, se fundaba en las disposiciones del Art. 208 del Código Político de Puerto Rico, 3 L.P.R.A. sec. 556, y de la Sec. 4.6, inciso 8, de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como la Ley de Personal del Servicio Público, 3 L.P.R.A. sec. 1336 (8), (³) las cuales en lo pertinente disponen:

*Sec. 556. Vacantes, cómo ocurren*

Queda vacante un cargo al ocurrir cualquiera de los siguientes casos, antes de vencerse el período de su duración:

. . . 8. *Ser sentenciado por delito grave (felony) o por cualquier delito que implique depravación moral, o infracción de sus deberes oficiales.* Y ser sentenciado por tribunal competente por fraude electoral cometido en el desempeño de sus deberes como funcionario electoral. (Énfasis suplido.)

*Sec. 1336. Retención*

.   .   .   .   .   .   .   .

(8) Se separará del servicio a tenor con la sec. 556 de este título a todo empleado convicto por cualquier delito grave o que implique depravación moral, o infracción de sus deberes oficiales.

La señora Hernández Cruz apeló de la decisión separándola de su cargo ante la Junta de Apelaciones del Sistema de

---

"El tribunal entiende que estos son unos hechos desdichados que ocurrieron motivados por unas desaveniencias [*sic*] matrimoniales precipitadas por la conducta de el occiso [*sic*] Antonio Collazo Burgos.

"Se le concede[n] los beneficios de una sentencia suspendida porque surge de la evaluación hecha que ella puede estar en la libre comunidad sin representar riesgos, en el desempeño de sus labores habituales y vida diaria."

(³) En su carta, la Secretaria también citó las disposiciones de la Sec. 4.3 de la referida Ley de Personal, 3 L.P.R.A. sec. 1333 (3). Dicha sección de ley, sin embargo, no es aplicable por cuanto se refiere a personas que *solicitan ingreso* al servicio público.

Administración de Personal (J.A.S.A.P.). Dicho organismo administrativo, mediante resolución a esos efectos, confirmó la decisión de la Secretaria de Instrucción Pública. Resolvió en síntesis, que en virtud de las disposiciones legales citadas por la autoridad nominadora el puesto que ocupaba la empleada "quedó automáticamente vacante" al ser ésta convicta y sentenciada por la comisión de un delito grave. Determinó J.A.S.A.P., en adición, que tal hecho convertía la apelación radicada "en académica al no haber controversia alguna que adjudicar" y que la señora Hernández Cruz, en virtud de las disposiciones del Art. IV (2) sobre Disposiciones Generales del Reglamento de Personal, (4) venía obligada a esperar el término de un año, desde la separación del empleo, para poder solicitar reingreso como empleado público.

Inconforme, la señora Hernández Cruz acudió en revisión ante el Tribunal Superior de Puerto Rico, Sala de Caguas. Dicho foro, mediante una bien fundamentada sentencia, revocó la decisión emitida por J.A.S.A.P. Determinó que la decisión emitida por el organismo administrativo violentaba las disposiciones de la Ley Núm. 70 de 20 de junio de 1963, la cual dispone:

> Sec. 556a. Empleo de personas convictas—Personas en li-
> libertad a prueba
>
> Una vez se suspenda la ejecución de una sentencia a virtud de las disposiciones de las secs. 1026 a 1029 ó 1042 y 1043 del Título 34, la persona así puesta en libertad a prueba quedará relevada de la inhabilidad establecida por ley para ocupar puestos públicos y para la prestación de servicios en cualquier otra forma en el Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias, instrumentalidades, organismos, oficinas y subdivisiones políticas.

---

(4) Reglamento de Personal: Habilitación para el Servicio Público Núm. 2187 de 30 de noviembre de 1976.

*Sec. 556b. —Personas en libertad bajo palabra*

Quedarán también relevadas de la inhabilidad a que se refiere la sec. 556a de este título las personas a quienes se les conceda la libertad bajo palabra de acuerdo con la Ley Núm. 266 de 4 de abril de 1946, según ha sido enmendada, y las personas puestas en libertad a prueba o en libertad bajo palabra por la jurisdicción federal de Estados Unidos, el Distrito de Columbia o cualquiera de los estados federados, territorios o posesiones de los Estados Unidos y que estuvieren residiendo en Puerto Rico por autorización de la autoridad que les hubiere concedido la libertad a prueba o la libertad bajo palabra.

*Sec. 556c. —Facultad para revisar y decidir*

Los efectos de las secs. 556a a 556e de este título se circunscribirán a la inhabilidad de ley para ocupar puestos públicos y la prestación de servicios al Gobierno de Puerto Rico, *pero el Director de la Oficina de Personal queda facultado para revisar cada caso por sus méritos y decidir la habilitación o no habilitación, según sea el caso,* teniendo en cuenta la conducta y la reputación general de la persona de quien se trate, así como la naturaleza y las funciones del puesto para el que se propone el nombramiento.

*Sec. 556d. —Derecho a continuar en el empleo; sujeción a disposiciones legales*

El relevo de inhabilidad que disponen las secs. 556a y 556b de este título no se interpretará en el sentido de dar derecho a un convicto a continuar ocupando ni a ocupar el mismo puesto, o a prestar el mismo servicio, que estuvo ocupando o prestando con anterioridad a su convicción o con anterioridad a la revocación de la libertad a prueba o bajo palabra. Las personas así relevadas de la inhabilidad para ocupar puestos públicos y para la prestación de servicios en cualquier otra forma, estarán sujetas a las disposiciones legales y a las reglas y reglamentos que rijan o se apliquen a la administración de personal en el Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias, instrumentalidades, organismos, oficinas y subdivisiones políticas.

*Sec. 556e. —Revocación de la libertad a prueba o de la libertad bajo palabra*

La revocación de la libertad a prueba o de la libertad bajo palabra de cualquier persona que estuviere ocupando un puesto público o prestando servicios en cualquier otra forma a virtud de las disposiciones de las secs. 556a a 556e de este título, conllevará, automáticamente, la pérdida de tal puesto o la terminación de la prestación de sus servicios, si éstos se prestaren en cualquier otra forma, y, asimismo, quedará restituida la inhabilidad que a estos efectos existía antes de concederse la libertad a prueba o la libertad bajo palabra. (Énfasis suplido.) 3 L.P.R.A. secs. 556a–556e.

Resolvió el tribunal de instancia, en síntesis y en lo pertinente, que como consecuencia del "relevo de la inhabilidad para desempeñar cargos públicos" que establece la transcrita Ley Núm. 70 de 1963, un empleado gubernamental convicto y sentenciado por delito grave a quien *simultáneamente* se le conceden los beneficios de una sentencia suspendida puede permanecer desempeñando su cargo hasta que otra cosa disponga el Director de la Oficina de Personal. Como consecuencia de ello, el referido foro ordenó la reinstalación de la señora Hernández Cruz al cargo público que ocupaba con el pago de los salarios dejados de percibir.

Acordamos expedir el auto de *certiorari* que radicara el Departamento de Instrucción Pública. Resolvemos.

I

■ No hay duda de que una lectura literal y aislada de las antes transcritas disposiciones legales causa confusión: las mismas aparentan conducir a resultados diferentes y contradictorios entre sí. Ahora bien, dispone el Art. 18 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 18, que las "leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro". Por su parte, el Art. 19

del citado Código, 31 L.P.R.A. sec. 19, nos informa que el "medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al poder legislativo a dictarla". En obediencia de dichos sabios principios, en *Badillo González* v. *F.S.E.*, 112 D.P.R. 665 (1982) —al enfrentarnos y tener el deber de armonizar dos estatutos aparentemente contradictorios— expresamos, a la pág. 668, que en esta clase de situaciones deben "explorarse más bien, . . . entre otros factores, los objetivos del legislador, las realidades sociales que motivaron el estatuto, el modo en que, en una sociedad cambiante, pueden cumplirse mejor los valores que la ley entraña".

◼ La citada Ley Núm. 70 de 1963 forma parte de una serie de estatutos —tales como la Ley Núm. 259 del 3 de abril de 1946, conocida como la Ley de Sentencias Suspendidas; la Ley Núm. 295 de 10 de abril de 1946 que instituyó la "libertad bajo palabra"— indicativos de una "nueva" filosofía penológica que tiene como objetivo la rehabilitación del delincuente; movimiento que desemboca en la aprobación del vigente Código Penal de Puerto Rico, creado por la Ley Núm. 115 de 22 de julio de 1974. Como es sabido, con la aprobación del Código Penal de 1974 desapareció de nuestro ordenamiento jurídico la "muerte civil" del convicto por delito grave, pena adicional que estatuía el Art. 20 del Código Penal de 1902, según revisado. Dicha pena acarreaba, entre otros, la pérdida de empleos públicos.

◼ Un examen del historial legislativo de la citada Ley Núm. 70 resulta altamente interesante y revelador. Somos del criterio que la aprobación en el 1963 de dicha pieza legislativa demuestra el deseo y la intención de nuestro legislador —once años antes de aprobar el nuevo Código Penal— de modificar parcialmente las disposiciones del entonces vigente Art. 20 del Código Penal de 1902 en cuanto a la pérdida automática de

empleos públicos al resultar un empleado gubernamental convicto de la comisión de un delito grave.

La legitimidad de la preocupación del legislador en esos momentos quedó plasmada en el Informe de la Comisión de lo Jurídico:

> . . . Resulta incongruente en la actualidad el que funcionarios gubernamentales gestionen empleos para estos libertados en la empresa privada cuando el propio gobierno mantiene una situación legal que cierra las puertas a estas personas para el logro de un empleo gubernamental. (5)

Sobre el significado y alcance de la Ley Núm. 70, encontramos el siguiente debate:

*Sr. Figueroa Rodríguez:* . . . ¿Se entenderá en ese Artículo que al individuo que se le levante la inhabilidad ésta del Proyecto, no puede ocupar o no tendrá derecho a ocupar el puesto que venía ocupando cuando fue convicto?

. . . . . . . .

*Sr. Ortiz Ortiz:* . . . La contestación a la pregunta es que al eliminarse la inhabilidad, la persona así de nuevo habilitada, aún si se tratara de una persona que anteriormente estaba desempeñando un cargo público, pues puede desempeñar cualquier otro cargo público. O sea, se elimina la inhabilidad, pero que eso no implica que no se debe interpretar esta Ley en el sentido de que congele o garantice a esa persona ir desempeñando ese mismo cargo específico que él ha venido desempeñando hasta la fecha de la Ley. O sea, que no le da un derecho de permanencia en ese cargo específico que está ocupando, sino que puede desempeñar cualquier otro cargo en el Gobierno. *Ahora, que eso no implica tampoco que, automáticamente, se le vaya a destituir de ese cargo específico que él tiene ahora. O sea, él podría continuar.* Lo que se aclara es que no se consagra un derecho adquirido en ese cargo que él tiene ahora.

---

(5) Informe de la Comisión de lo Jurídico de la Cámara sobre el P. de la C. 824 de 21 de mayo de 1963, pág. 2; véase además el Memorial Explicativo de la Oficina de Personal de 14 de marzo de 1963.

*Sr. Presidente:* Pero lo que quiere saber el Representante, de manera clara y categórica, es si la disposición de este Artículo que él ha leído inhabilita a la persona para ocupar el mismo cargo. Por el lenguaje que usa. *Si lo inhabilita.*

*Sr. Ortiz Ortiz: No, a mi juicio, la contestación es que no lo inhabilita para continuar el mismo cargo.* Lo que se hace es que no le consagra un derecho adquirido a ese cargo. *Pero puede continuar en el cargo. No lo inhabilita.* (Énfasis suplido.) (⁶)

## II

■ El historial legislativo de la Ley Núm. 70 de 1963 hace insostenible la posición asumida por la Junta de Apelaciones; la misma parte de la premisa que las únicas disposiciones legales aplicables a esta situación lo son el Art. 208 del Código Político y la Sec. 4.6, inciso 8 de la Ley de Personal, ignorando por completo las disposiciones, y la intención legislativa, de la citada Ley Núm. 70. Dichos preceptos legales son completa y perfectamente armonizables entre sí. No hay duda de que, en virtud de las disposiciones del citado Art. 208 del Código Político de 1902 y de la Sec. 4.6, inciso 8 de la Ley de Personal, la

---

(⁶) 15 Diario de Sesiones de la Asamblea Legislativa 387, 389 (1962). Dicho debate legislativo, aun cuando referente al Proyecto del Senado 184, el cual fue vetado por el entonces Gobernador de Puerto Rico, Hon. Luis Muñoz Marín, *es completamente pertinente y aplicable* por cuanto el Proyecto de la Cámara 824, que fue el que se convirtió finalmente en la Ley Núm. 70, *es básicamente igual* al P. del S. 184. La *única diferencia* fue que al P. de la C. 824 se *le añadió* la oración que aparece en el Art. 3 de la Ley Núm. 70 a los efectos de que "el Director de la Oficina de Personal queda facultado para revisar cada caso por sus méritos y decidir la habilitación o no habilitación, según sea el caso". De hecho esta situación abona a la posición que hoy asumimos por cuanto la misma se hizo en protección del servicio público; en otras palabras, como el propósito de la Ley Núm. 70 es *relevar* al empleado de la inhabilidad para desempeñar el cargo que ocupa, se le quiso dar facultad al Director de la Oficina de Personal para decidir si permite que éste continúe en su empleo o si por el contrario procede su destitución, dependiendo de las circunstancias presentes en el caso en particular.

convicción y sentencia por delito grave constituye, como regla general, causa suficiente en derecho para la separación de un empleado gubernamental del cargo público que ocupa al momento de producirse la misma. No es menos correcto, sin embargo, que si a ese empleado, al ser sentenciado, se le conceden los beneficios de una sentencia suspendida, el mismo —por excepción establecida por la citada Ley Núm. 70— puede *continuar* desempeñando el cargo que ocupa hasta tanto el Director de la Oficina de Personal disponga otra cosa; decisión que tomará a base de los criterios que establece la propia Ley Núm. 70. La determinación que finalmente haga dicho funcionario, naturalmente, estará sujeta a revisión por los canales apropiados.

■ En el presente caso surge claramente del expediente que la decisión de la Secretaria de Instrucción Pública separando a la recurrida Tomasita Hernández Cruz de su cargo se basó exclusivamente en el hecho de que dicha empleada había resultado convicta de un delito grave. No hubo evaluación ni revisión alguna en los méritos por parte del Director de la Oficina de Personal antes de que se decretara la referida separación. La destitución de un cargo público bajo esas circunstancias, sin haberse justificado la misma en la necesidad de proteger el servicio público, atentaría contra el "derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente", lo cual "es un principio inalienable al hombre, preexistente a la más antigua de las constituciones conocidas". *Amy* v. *Adm. Deporte Hípico*, 116 D.P.R. 414, 421 (1985).

Por los fundamentos antes expresados, *procede la confirmación de la sentencia emitida en el presente caso por el Tribunal Superior de Puerto Rico, Sala de Caguas.*