MINERVA RODRÍGUEZ CANDELARIO, demandante y recurrida, *v.* WILLIAM RIVERA VEGA, demandado y peticionario.

*Número:* CE-86-608      *Resuelto:* 23 de enero de 1989

*Carlos J. Correa Ramos* y *Carlos R. Ramos Ortiz,* abogados del peticionario; *Felipe C. Matos Rivera* y *Milagros Casiano Sepúlveda,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Debemos determinar en este caso si aún existe en Puerto Rico la causal de divorcio por la condena de uno de los cónyuges por delito grave que lleve aparejada la pérdida de los derechos civiles. Atendidas las normas legales pertinentes y el desarrollo orgánico de las instituciones penales y civiles en nuestro Derecho, resolvemos que luego de la reforma penal de 1974 no existe en el ordenamiento puertorriqueño la causal invocada. Como consecuencia, revocamos al foro de instancia y devolvemos el caso para la continuación de los procedimientos de forma compatible con lo expresado en la última parte de la opinión.

## I

Minerva Rodríguez Candelario y William Rivera Vega contrajeron matrimonio en enero de 1984. No procrearon hijos. El 16 de septiembre de 1985 Minerva formuló la demanda de divorcio, origen de este recurso, fundada en el inciso (2) del Art. 96 del Código Civil, 31 L.P.R.A. sec. 321(2).

Alegó que William se encontraba bajo custodia de la Administración de Corrección desde el 21 de mayo de 1985, ya que había resultado convicto por delitos graves de falsificación "y esta[ba] cumpliendo 10 años concurrentes de 39 años que le impuso el Tribunal Superior de Puerto Rico, Sala de Mayagüez". Apéndice, pág. 1.

Notificada la demanda por conducto del Superintendente de la Cárcel de Distrito de Humacao, el señor Rivera aceptó que al momento de presentarse la misma se encontraba extinguiendo una condena por delito grave, pero negó, como cuestión de derecho, que existiera al presente en nuestro ordenamiento jurídico la causal invocada. Solicitó que se declarara sin lugar la demanda.

Oportunamente, el demandado pidió que se dictara sentencia por las alegaciones. Señaló básicamente que con la aprobación del Código Penal de 1974 y consiguiente derogación de los principios de degradación cívica del sentenciado, dicha causal de divorcio quedó tácitamente sin efecto. Luego de un incidente de traslado, el tribunal a quo declaró no ha lugar la moción de sentencia por las alegaciones. La parte demandada recurrió ante nos en *certiorari*, a la vez que solicitó la paralización de los procedimientos. El foro de instancia accedió.

Luego de los trámites de rigor, acordamos revisar esta controversia que desde hace años viene generando un intenso debate en las aulas universitarias y círculos profesionales del país.

## II

El Art. 96(2) del Código Civil, *supra*, lee de la forma siguiente:

Las causas del divorcio son:

.        .        .        .        .        .       .        .

2. La condena de uno de los cónyuges por delito grave que lleve aparejada la pérdida de los derechos civiles.

Como veremos, en el presente caso el recuento histórico es esencial. Desde tiempos remotos, la condena penal ha conllevado limitaciones más o menos extensas en el ejercicio de la capacidad jurídica en general. Tradicionalmente a este estado se le ha denominado de forma genérica *interdicción*. Los más vetustos monumentos legislativos de nuestro derecho histórico van elaborando el concepto: *Las Siete Partidas del Rey Don Alfonso, El Sabio*; las Leyes de Toro; la *Novísima Recopilación de las Leyes de España*, etc. Así, la interdicción es incorporada al ordenamiento jurídico español y, posteriormente, adoptada por el nuestro. F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. I, págs. 278–280; L. Muñoz Morales, *Reseña histórica y anotaciones al Código Civil de Puerto Rico*, Río Piedras, Junta Editora de la U.P.R., 1947, Parte II, pág. 576 *et seq.*; C.E. Mascareñas, *La condena penal como causa modificativa de la capacidad*, Año II (Núm. 6) Rev. Der. Pur. 68 (1962).

Los fundamentos racionales de la incapacidad civil de los penados es materia de diversas apreciaciones. Para una dirección doctrinal muy extendida la *interdicción* nunca es una pena principal, sino siempre accesoria a una que apareja reclusión. Se trata realmente de un resabio de la muerte civil que el derecho romano imponía a ciertos condenados. Bajo una segunda escuela, la influencia de la pena en las manifestaciones de la capacidad se debe a la imposibilidad en que se encuentra el presidiario de cumplir con sus deberes familiares. Es decir, la *interdicción* "no solamente tiene en mira al condenado sino también a su familia". Puig Peña, *op. cit.*, pág. 280 n. 14.

En cualquier caso, nuestro Código Civil sigue, en materia de *interdicción*, el mismo sistema de ordenamientos anteriores y se limita a hacer aplicación de los principios consignados en el Código Penal. Cuando empezó a regir en Puerto Rico el Código Civil español, estaba vigente el Código Penal

del año 1870, hecho extensivo por Real Decreto en 1879. Dis-
ponía, entonces, en su Art. 43 que:

> La interdicción civil privará al penado, mientras la estu-
> viere sufriendo, de los derechos de patria potestad, tutela, cu-
> raduría, participación en el consejo de familia, de la autoridad
> marital, de la administración de bienes y del derecho de dispo-
> ner de los propios por actos entre vivos. Exceptúanse los
> casos en que la ley limita determinadamente sus efectos. S.
> Viada Vilaseca, *Código Penal Reformado de 1870*, 2da ed.,
> Madrid, Imprenta y Librería de Eduardo Martínez, 1877,
> pág. 90.

Bajo el esquema entonces vigente, era posible saber qué
derechos civiles del penado estaban afectados con la *inter-
dicción*. Con el cambio de soberanía, sin embargo, comien-
zan las interrogantes. En el 1902 el legislador suprime la
pena de *interdicción* en el Código Penal. No obstante, no se
dio cuenta de que debía modificar igualmente toda una serie
de normas en el Código Civil que *aún* hoy afectan la capaci-
dad de actuar del "interdicto".[1] En su lugar, el legislador
creó tres (3) artículos —20, 21 y 22— que son copia de los
Arts. 673, 674 y 675 del Código Penal de California.[2] Como
resultado, surge temprano en nuestra historia jurídica lo que
Muñoz Morales denominó "incongruencia" entre dos (2) or-

---

[1] Véanse: Arts. 168(4), 192, 195, 630(6), 778(4), 780(1) y (2), 1328, 1623(3),
todos del Código Civil, 31 L.P.R.A. secs. 662(4), 715, 741, 2146(6), 2456(4), 2458(1)
y (2), 3712, 4481(3), respectivamente.

[2] Art. 20: "Toda sentencia de presidio temporal lleva aparejada *la suspen-
sión de los derechos civiles del sentenciado*, con más la pérdida de empleos públi-
cos y cargos privados de confianza, autoridad, o poder mientras dure dicha
prisión."

Art. 21: "La sentencia de presidio perpetuo lleva aparejada la muerte civil
del sentenciado."

Art. 22: "Las disposiciones de los dos últimos artículos no deberán enten-
derse en el sentido de incapacitar a las personas mencionadas en ellos para servir
de testigo en alguna causa o procedimiento criminal, o para efectuar o reconocer
alguna venta o traspaso de bienes." (Énfasis suplido.) *Compilación de los esta-
tutos revisados y códigos de Puerto Rico*, San Juan, Bureau of Supplies, Printing
and Transportation, 1914–1916, pág. 916.

denamientos que hasta entonces habían ido de la mano. Muñoz Morales, *op. cit.*, pág. 574. Mascareñas también analiza la situación y formula interesantes interrogantes sobre el significado incierto de la nueva terminología importada de California y su impacto sobre nuestro derecho privado. Mascareñas, *supra*, pág. 69.

La norma en controversia en este caso es fruto de esta evolución. En su germen, la causal figuraba en el Art. 105 del Código Civil español como motivo de separación; luego, bajo la influencia de los Arts. 138 y 139 del Código Civil de Louisiana, pasa a ser el inciso (2) del Art. 164 del Código Civil revisado de 1902. Véase *Compilación de los estatutos revisados y códigos de Puerto Rico*, San Juan, Bureau of Supplies, Printing and Transportation, 1914–1916, pág. 644. Es en esta etapa que incorporamos por vez primera el concepto de *pérdida de derechos civiles* en lugar de "suspensión", como disponía el Art. 20 del Código Penal tomado del Art. 673 del Código Penal de California, *supra*. El *lapsus* nos llevó a resolver en *Torres Archilla v. Archilla*, 36 D.P.R. 771, 772 (1927), que "suspensión" debía equipararse a "pérdida temporal" para efectos del Art. 164(2) del Código Civil de 1902. Por necesidades de coordinación, en correcta hermenéutica, tuvimos que recurrir a los Arts. 20 a 21 del Código Penal para darle contenido y significado al precepto civil.

■ Finalmente, el Código Civil de 1930 incorpora la causal discutida en su Art. 96(2), *supra*. No sufre variación en esta ocasión. Como concepto indivisible por disposición legislativa, es imprescindible que el demandado sea condenado por delito grave "que lleve aparejada la pérdida de los derechos civiles". Íd. De acuerdo con este criterio central, "lo que determina la causal de divorcio, no es precisamente la comisión del delito sino la pérdida de los derechos civiles que interfieren o pueden interferir las relaciones conyugales". E.

Menéndez, *Lecciones del Derecho de Familia*, Río Piedras, Ed. Universitaria, 1976, pág. 265.

■ Nuevos enfoques, más acordes con la doctrina penal moderna, toman forma en el Código Penal de 1974, Ley Núm. 115 de 22 de julio de 1974 (33 L.P.R.A. sec. 3001 *et seq.*). Según principios de "justicia rehabilitadora, no espiacionista", a modo de preámbulo, el condenado deja de ser un ser al margen del ordenamiento jurídico. Informe de la Comisión de lo Jurídico Penal de la Cámara de Representantes sobre el P. de la C. 927 (transcripción parcial), Código Penal de 1974 (33 L.P.R.A. sec. 3001n.), pág. 427. Actualmente en Puerto Rico no existe pena que lleve aparejada pérdida o suspensión de derechos civiles. Véanse: Arts. 39 a 49A dèl Código Penal, 33 L.P.R.A. secs. 3201 a 3212. Fue abolida igualmente "[l]a aberrante institución de la 'muerte civil' [que] implica la negación del hombre mismo". J. Miró Cardona, *El Sistema Penal de Puerto Rico*, XXXV (Núm. 3) Rev. Jur. U.P.R. 375, 379 (1966); *Hernández Cruz v. Sria. de Instrucción*, 117 D.P.R. 606 (1986).

Así lo reconoció en 1975 el Consejo sobre la Reforma de la Justicia, al recomendar la reformulación de la causal de divorcio por condena "a fin de omitir la referencia que en ella se hace a la pérdida de derechos civiles". Informe sobre el libro primero del Código Civil de Puerto Rico, sometido al Consejo sobre la Reforma de la Justicia en Puerto Rico, por el comité designado por dicho cuerpo para tal fin de 8 de noviembre de 1974, pág. 113. Sin embargo, hasta ahora la Asamblea Legislativa no ha revisado este aspecto de nuestro régimen de divorcio a la luz de los cambios habidos en el Código Penal de 1974. La situación es extensiva a otras zonas del derecho privado.

■ Eliminada la arquitectura externa del Código Penal, en la que se cimentaba la causal en controversia, no es posi-

ble atribuirle, por ficción, vida independiente en el Código Civil. Se impone, por lo tanto, la conclusión de que con la aprobación del Código Penal de 1974 y consiguiente derogación de los Arts. 20 y 21 de dicho ordenamiento, ya no es posible recurrir al Art. 96(2) del Código Civil, *supra*, como causal de divorcio.

## III

Lo hasta el momento expresado no dispone absolutamente de la controversia. Somos conscientes de que la demandante no puede invocar la causal de separación, pues ésta ha de ser necesariamente voluntaria; tampoco puede valerse de la causal de mutuo consentimiento, por faltar el acuerdo en este caso. No obstante, procede la devolución del recurso al foro de instancia para darle la oportunidad a la recurrida de enmendar la demanda y alegar la *injuria* como causa de divorcio. Art. 96(4) del Código Civil, 31 L.P.R.A. sec. 321(4). Nos explicamos.

Mascareñas, al referirse a la causal de trato cruel e injurias graves, nos dice: "se establece una causa amplia, con una expresión general. Es un supuesto genérico, con una significación lata." C.E. Mascareñas, *La disolución del matrimonio en el Derecho puertorriqueño*, XXIX (Núm. 2) Rev. Jur. U.P.R. 269, 275 (1960). Y nos dice a continuación el insigne autor:

> De las diversas conductas que caben dentro del supuesto genérico de "trato cruel o injurias graves" hay que excluir aquellas que están fijadas taxativamente en la ley como causas de divorcio independientes del trato cruel e injurias graves, *y que, dada su naturaleza, constituyen también un trato cruel o una injuria grave al otro cónyuge. Así las causas señaladas con los números 1, 2, 3, 7 y 8 del Artículo 96 del Código Civil.*
>
> Además, cuando vienen taxativamente fijadas quedarán limitadas al supuesto que contempla la ley. Así, la causa del número 2 del artículo 69: "la condena de uno de los cónyuges

por delito grave que lleve aparejada la pérdida de los derechos civiles". Resulta evidente que el legislador ha querido limitar la condena, como causa de divorcio, a la que ha sido impuesta por delito grave que lleve aparejada la pérdida de los derechos civiles. Por lo tanto, no cabrá considerar como comprendida dentro del concepto de injuria grave una condena que no sea por delito grave que lleve aparejada la pérdida de los derechos civiles, pues queda excluída como causa de divorcio según el texto del mencionado número 2 del artículo 69 del Código Civil. (Énfasis suplido.) Íd., pág. 276.

La situación de vacío legislativo, ocasionada por la desaparición tácita del inciso (2) del Art. 96 del Código Civil, *supra*, curiosamente elimina el problema de "especialidad" por conducta taxativamente fijada a que se refería el profesor Mascareñas. No hay, al presente, impedimento jurídico alguno para que la peticionaria reconduzca su acción bajo la rúbrica ancha del inciso cuarto.

La mejor doctrina apoya esta conclusión bajo cualesquiera de los dos (2) sistemas de influencia: el Código Civil español y el Código Civil francés, incorporado vía Louisiana. En España, por ejemplo, la condena *que implica privación de libertad* tradicionalmente ha sido concebida "como situación que daña el *honor matrimonii*, injuria al otro cónyuge, impide el cumplimiento de los deberes familiares y puede contribuir a la ruptura de la comunidad conyugal". M. Pons González y M.A. del Arco Torres, *Separación, divorcio y nulidad matrimonial: régimen jurídico*, Granada, Ed. Comares, 1985, pág. 72; M. López Alarcón, *El Nuevo Sistema Matrimonial Español*, Madrid, Ed. Tecnos, 1983, págs. 162–163.

En el Derecho francés, la condena por delito que apareja reclusión también históricamente ha conllevado *injuria grave*. "El cónyuge a cuya fama y consideración pudiera perjudicar la degradación en que el otro esposo haya incurrido, podrá invocarla como una injuria, fundando en ella la demanda de divorcio . . . . En todos estos casos, no tanto la

condena como el hecho deshonroso que la ha producido es lo que constituye la injuria causa del divorcio." A. Colin y H. Capitant, *Curso Elemental de Derecho Civil*, Madrid, Ed. Reus, 1975, T. I, pág. 499; H.L. Mazeaud y J. Mazeaud, *Lecciones de Derecho Civil*, Buenos Aires, Eds. Jurídicas Europa-América, 1959, Parte I, Vol. IV, pág. 409.[3] Véanse, también: H. Larraín Ríos, *Divorcio: estudio de Derecho Civil comparado*, Chile, Ed. Jurídica de Chile, 1966, pág. 194; D.L. Barroetaveña, *El divorcio en el Derecho argentino*, Buenos Aires, Ed. La Ley, 1967, pág. 80.

■ De acuerdo con estas directrices, no hay duda de que los hechos aceptados por la parte recurrida establecen el trato cruel e injurias graves, causa de divorcio conforme al inciso (4) del Art. 96 del Código Civil, *supra*. Están presentes los elementos de gravedad del delito y pérdida de libertad por un tiempo considerable que son susceptibles de contribuir a la ruptura de la comunidad conyugal. Aclarado el marco jurídico, procede devolver el caso al tribunal de instancia para permitir que la recurrida, de así entenderlo necesario, enmiende su demanda de divorcio a fin de alegar la antes mencionada causal.

El Juez Asociado Señor Rebollo López disiente sin opinión escrita. El Juez Asociado Señor Ortiz no intervino.

---

(3) Originalmente el Código Civil de Louisiana tomó prestado, del Art. 231 del Código Civil francés, el concepto de "condena a pena aflictiva e infamante" que entrañaba *privación de libertad* y excluía las condenas pronunciadas por delitos puramente políticos. Véanse: A. Colin y H. Capitant, *Curso Elemental de Derecho Civil*, Madrid, Ed. Reus, 1975, T. I, pág. 498; H.L. Mazeaud y J. Mazeaud, *Lecciones de Derecho Civil*, Buenos Aires, Eds. Jurídicas Europa-América, 1959, Parte I, Vol. IV, pág. 408. En la actualidad, el Código Civil de Louisiana sólo exige condena por *delito grave y reclusión*, ya sea como fundamento del divorcio o de la separación. Véanse: L.S.A.-C.C. Art. 138(2); L.S.A.-C.C. Art. 139(2); *Nickels v. Nickels*, 347 So. 2d 510 (La. 1977).