EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Energía Eléctrica<br>      Recurrida<br><br>              v.<br><br>Unión de Trabajadores de la Industria<br>Eléctrica y Riego<br>      Peticionaria | Certiorari<br><br>2001 TSPR 37 |

Número del Caso: CC-2000-278

Fecha: 21/marzo/2001

Tribunal de Circuito de Apelaciones:
                          Circuito Regional I

Juez Ponente:
                          Hon. Yvonne Feliciano Acevedo

Abogado de la Parte Peticionaria:
                          Lcdo. José Velaz Ortiz


Abogados de la Parte Recurrida:
                          Lcdo. Pedro Rivera Pérez
                          Lcdo. Juan José Ríos Martínez

Materia: Revisión Judicial de Decisión Administrativa

        Este documento constituye un documento oficial del Tribunal Supremo que está
        sujeto a los cambios y correcciones del proceso de compilación y publicación
        oficial de las decisiones del Tribunal. Su distribución electrónica se hace
        como un servicio público a la comunidad.

Autoridad de Energía Eléctrica

     Recurrida

        vs.                CC-2000-278     CERTIORARI

Unión de Trabajadores de la
Industria Eléctrica y Riego

     Peticionaria

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 21 de marzo de 2001

El 17 de febrero de 1997, el Tribunal de Primera Instancia, Sala Superior de Ponce, dictó sentencia contra el Sr. Rigoberto Rodríguez Class, imponiéndole una pena de reclusión de 2 años por violación al Artículo 404-A de la Ley de Sustancias Controladas. Ese mismo día fue ingresado en el Complejo Correccional de Ponce. Para ese entonces, el Sr. Rodríguez trabajaba en la Central Costa Sur de la Autoridad de Energía Eléctrica --en adelante Autoridad-- y pertenecía a la Unión de Trabajadores de la Industria Eléctrica y Riego, en adelante UTIER.

El 28 de mayo de 1997, la Administración de Corrección transfirió al Sr. Rodríguez al programa

de pases extendidos, autorizándolo así a cumplir la sentencia en la libre comunidad. Por ello, al día siguiente se presentó a su lugar de empleo, pero la Autoridad no le permitió trabajar. Ante tal situación, el 11 de junio de ese mismo año envió una carta a la Oficina de Procedimientos Especiales de la Autoridad, solicitando su reinstalación a la posición que ocupaba y el pago de los salarios dejados de percibir desde el 29 de mayo. El 17 de junio de 1997, la Oficina de Procedimientos Especiales contestó la misiva del Sr. Rodríguez, sosteniendo que éste no reunía los requisitos de ley para ocupar un puesto público, por lo que no procedía su reingreso como empleado de la Autoridad.[1]

El 16 de julio de 1997, el Director Ejecutivo de la Autoridad, Ing. Miguel A. Cordero, remitió una carta al Sr. Rodríguez donde declaró vacante la plaza que ocupaba por razón de haber sido convicto de delito grave; ello en virtud de las disposiciones del Artículo 208 del Código Político y de

---

[1] Mientras el Sr. Rodríguez realizaba las gestiones antes señaladas en la Oficina de Procedimientos Especiales de la Autoridad, la UTIER tomaba las acciones correspondientes en la División Central Costa Sur. Al respecto, el 17 de junio de 1997, la Unión presentó una querella informal ante el Supervisor de Estructuras y Terrenos de la Central Costa Sur por violación al Convenio Colectivo. Éste respondió afirmando que la Autoridad no había violado el Convenio, y que el mismo no era de aplicación al caso de autos. Además, expresó que el Sr. Rodríguez no estaba habilitado para ocupar una posición en la Autoridad.

El 24 de junio de 1997, el Supervisor de Estructuras y Terrenos de la Central Costa Sur formuló varios cargos --de conformidad con el Procedimiento Disciplinario pautado en el Convenio-- contra el Sr. Rodríguez por alegada infracción a las Reglas de Conducta, específicamente por ausentismo crónico y ausencias no justificadas. En esa misma fecha, la UTIER elevó la querella informal ante el Administrador de Asuntos Técnicos y Ambientales. Este último encomendó el asunto al Jefe Interino de la División Central Costa Sur, quien, luego de celebrada una vista, concluyó que no se había violado el Convenio en ninguna de sus partes y que el Sr. Rodríguez no estaba capacitado para ocupar un puesto en el servicio público.

la Sección 106 del Manual Administrativo de la Autoridad.[2] El 29 de julio, la UTIER solicitó la celebración de una vista administrativa.

Celebrada la vista, el 16 de octubre de 1998 el Oficial Examinador rindió un informe, donde recomendó que se confirmara la actuación de la Autoridad, decretando la separación definitiva de empleo y sueldo del Sr. Rodríguez. Por entender que dicho informe constituía un laudo de arbitraje, la UTIER recurrió ante el Tribunal de Primera Instancia mediante recurso de impugnación de laudo de arbitraje. El 6 de abril de 1999, el foro de instancia dictó sentencia declarándose sin jurisdicción en el recurso presentado, por alegadamente tratarse de una resolución de índole administrativa y no de un laudo de arbitraje.

En vista de ello, el 11 de junio de 1999 el Director Ejecutivo de la Autoridad acogió el informe del Oficial Examinador y procedió a ratificar la cesantía decretada el 16 de julio de 1997. Denegada la reconsideración, el 13 de agosto de 1999 el Sr. Rodríguez presentó un recurso de revisión ante el Tribunal de Circuito de Apelaciones, por entender que la Autoridad había violado el debido proceso de ley al infringir el procedimiento disciplinario establecido en el Convenio Colectivo.

El 9 de noviembre de 1999, el foro apelativo intermedio emitió resolución denegando el auto de revisión solicitado. En síntesis, concluyó que el Sr. Rodríguez no fue objeto de una suspensión sumaria ni sometido a una medida disciplinaria, sino que éste se encontraba inhabilitado para ocupar un puesto público por haber sido convicto de delito grave. Inconforme con esta resolución, el Sr. Rodríguez recurrió ante este Tribunal, mediante recurso de *certiorari*, señalando que erró el Tribunal Apelativo al:

> [...] ratificar una determinación administrativa de cesantía sumaria mediante la cual se privó al Recurrente de su interés propietario en la retención de su empleo sin unas garantías procesales que cumplan con el debido proceso de ley.
>
> [...]
>
> [...] ratificar una determinación administrativa en la cual se realizó una suspensión definitiva de empleo y sueldo sumaria

_____

[2] La cesantía fue efectiva el 27 de julio de 1997.

en circunstancias no incluidas en la [sic] disposiciones del Convenio Colectivo vigente que sólo permite dicha medida a los cargos de desfalco, hurto, escalamiento, mal uso de los fondos de la Autoridad o cuando haya motivos razonables de que existe el peligro real de destrucción para la propiedad de la Autoridad o la vida de cualquiera de sus empleados. Ninguna de tales circunstancias está presente en el caso de autos. [...]

[...] ratificar una determinación administrativa en la cual no se cumplió con el debido proceso de ley, con la Ley Núm. 70 de 20 de junio de 1963 (sobre empleo de personas convictas) ni con la jurisprudencia aplicable, que requería antes de cesantear al Recurrente la celebración de una vista donde, entre otras cosas se determine si era de aplicación dicha Ley Núm. 70. [...]

El 12 de mayo de 2000, expedimos el recurso. Estando en condiciones de resolver el mismo, procedemos a así hacerlo.

I

El debido proceso de ley, en su vertiente procesal, obliga al Estado a celebrar un procedimiento justo y equitativo al intervenir con el interés propietario de una persona. A tenor con lo anterior, hemos reconocido a aquellos funcionarios públicos que poseen un interés propietario en su puesto el derecho a ser notificados de los cargos en su contra y a la celebración de una vista informal previa a su despido. Véase: Unión Independiente de Empleados de la Autoridad de Edificios Públicos v. Autoridad de Edificios Públicos, res. el 13 de agosto de 1998, 98 TSPR 117, 98 JTS 111, pág. 52. Véase, además: Marrero Caratini v. Rodríguez Rodríguez, 138 D.P.R. 215 (1995); Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990).

Como todo derecho, cualquier persona puede renunciar a la celebración de la vista antes señalada.[3] Aun más, dicho derecho puede ser renunciado por la unión u organización laboral que representa a los empleados ante el patrono, pues las uniones tienen la facultad para renunciar a los derechos de sus representados; ello en vista de que los representantes de los obreros unionados fueron seleccionados libremente por éstos y se presume la debida representación. Condado Plaza Hotel & Casino v. Asociación de Empleados de Casino de Puerto Rico, res. el 7 de octubre de 1999, 99 TSPR 148, 99 JTS 153, pág. 147. Ahora bien, para que la renuncia sea válida, deberá constar la misma en forma clara, expresa e inequívoca. Id.

En el caso ante nos, la UTIER y la Autoridad firmaron un Convenio Colectivo cuya duración se extendía del 16 de mayo de 1992 al 16 de mayo de 1998. En lo que aquí respecta, la Sección 5 del Artículo XLI de dicho Convenio disponía que solamente podían ser suspendidos de empleo y sueldo, antes de la celebración de la vista, aquellos empleados acusados de desfalco, hurto, escalamiento, mal uso de los fondos de la Autoridad, o cuando exista un peligro real de destrucción de la propiedad de la Autoridad o la vida de cualquiera de sus empleados. Tal medida constituye una renuncia clara, expresa e inequívoca a la celebración de una vista previa al despido en las mencionadas situaciones. Según surge de los hechos, la suspensión del Sr. Rodríguez se basó en una convicción por violar el Artículo 404-A de la Ley de Sustancias Controladas,[4] situación no contemplada en el Convenio. Debido a ello, concluimos que éste tenía derecho a la celebración de la vista.

---

[3] "Es doctrina firmemente sostenida por este Tribunal que los derechos, incluso los constitucionales, son renunciables." Lizarríbar v. Martínez Gelpí, 121 D.P.R. 770, 784 (1988).

[4] "Será ilegal el que cualquier persona, a sabiendas o intencionalmente, posea alguna sustancia controlada, a menos que tal sustancia haya sido obtenida directamente o de conformidad con la receta u orden de un profesional actuando dentro del marco de su práctica profesional, o excepto como se autorice en este Capítulo." 24 L.P.R.A. sec. 2404(a).

II

No obstante lo anterior, la Autoridad sostiene que el Sr. Rodríguez no fue despedido de forma sumaria, sino que su puesto quedó vacante al haber sido convicto por delito grave, situación que lo inhabilita para ocupar un puesto público.

Sobre este particular, el Artículo 208 del Código Político de 1902, 3 L.P.R.A. sec. 556, establece que cualquier cargo público quedará vacante, entre otras razones, en aquellos casos en que el funcionario sea sentenciado por delito grave o por cualquier delito que implique depravación moral. Esta norma fue atemperada por la Ley Núm. 70 de 20 de junio de 1963 -en adelante Ley Núm. 70-, 3 L.P.R.A. 556a et *seq.*, a los efectos de relevar de la inhabilidad para ocupar puestos públicos a todas las personas que le sea suspendida la ejecución de la sentencia o les sea concedida la libertad bajo palabra. Véase Ley Núm. 70 de 20 de junio de 1963.[5] Así lo reconocimos en Hernández Cruz v. Sria. de Instrucción, 117 D.P.R. 606, 614-15 (1986), donde expresamos:

"No hay duda de que, en virtud de las disposiciones del citado Art. 208 del Código Político de 1902 [...] la convicción y sentencia por delito grave constituye, como regla general, causa suficiente en derecho para la separación de un empleado gubernamental del cargo público que ocupa al momento de producirse la misma. No es menos correcto, sin embargo, que si a ese empleado, al ser sentenciado, se le conceden los beneficios de una sentencia suspendida, el mismo -por excepción establecida por la citada Ley Núm. 70- puede *continuar* desempeñando el cargo que ocupa."

---

[5] El Artículo 1 de la Ley Núm. 70 dispone: "Una vez se suspenda la ejecución de una sentencia [...] la persona así puesta en libertad a prueba quedará relevada de la inhabilidad establecida por ley para ocupar puestos públicos." 3 L.P.R.A. sec. 556a. Por su parte, el Artículo 2 establece que "[q]uedarán también relevadas de la inhabilidad a que se

Sin embargo, tal relevo estará sujeto a lo que disponga posteriormente el director de personal de la agencia pertinente, pues la Ley Núm. 70 faculta a éste "para revisar cada caso por sus méritos y decidir la habilitación o no habilitación". 3 L.P.R.A. sec. 556c; <u>Hernández Cruz</u> v. <u>Sria. de Instrucción</u>, ante. La decisión tomada por el Director de Personal <u>**no podrá basarse exclusivamente en la convicción por delito grave,**</u> <u>**sino que éste deberá evaluar los méritos de cada caso, tomando en**</u> <u>**consideración**</u> "la conducta y la reputación general de la persona de que se trate, así como la naturaleza y las funciones del puesto". 3 L.P.R.A. sec. 556c; <u>Hernández Cruz</u> v. <u>Sria. de Instrucción</u>, ante.

En el caso particular ante nuestra consideración, debe señalarse que, la Sección 106, Inciso (e), del Manual Administrativo de la Autoridad de Energía Eléctrica, dispone que será causa suficiente para separar del servicio a cualquier empleado, sin que ello implique una destitución, convicto por delito grave o por cualquier delito que implique depravación moral; dispone, además, que el puesto del empleado así convicto será declarado vacante automáticamente. Ello no obstante, establece que en aquellos casos en que el empleado se acoja a los beneficios de sentencia suspendida o libertad a prueba, el Director Ejecutivo deberá evaluar los hechos particulares de acuerdo con las necesidades de protección del servicio público.

En el caso ante nuestra consideración, el Sr. Rodríguez fue transferido al Programa de Pases Extendidos de la Administración de Corrección; es decir, <u>no</u> se encontraba acogido a los beneficios de una sentencia suspendida o de libertad bajo palabra. El Programa de Pases Extendidos fue creado en virtud de la Ley Núm. 116 de 22 de julio de 1974, según enmendada —en adelante Ley Núm. 116—, 3 L.P.R.A. sec. 1101 *et seq.*, cuyo propósito consiste en "ofrecerle al sistema correccional de Puerto Rico, mecanismos y soluciones de avanzada, ajustados a la realidad y a los mejores intereses de la comunidad puertorriqueña, mediante la implementación de una reforma profunda en sus estructuras y programas".

---

refiere la sec. 556a de este título las personas a quienes se les conceda la libertad bajo palabra." 3 L.P.R.A. sec. 556b.

Exposición de Motivos Ley Núm. 116. Con ese fin en mente, se creó la Administración de Corrección con los poderes necesarios para maximizar la probabilidad de rehabilitación en el delincuente. *Id.*

El Artículo 10 de la Ley Núm. 116, faculta a la Administración de Corrección "a conceder permiso a los confinados para salir de las instituciones penales o centros de tratamiento [...] en todo caso en que se determine que la concesión de dicho permiso constituye una medida conveniente y necesaria para la rehabilitación del recluso mediante su readaptación progresiva en la comunidad". 4 L.P.R.A. sec. 1136. Con el fin de regular la concesión de estos permisos, la Administración de Corrección aprobó el Reglamento para la Concesión de Permisos a los Confinados para Salir o Residir Fuera de las Instituciones Penales del Estado Libre Asociado de Puerto Rico –en adelante Reglamento–. De acuerdo con éste, los permisos podrán ser concedidos a los confinados para: (1) visitar condicionalmente sus hogares y los de sus familiares y relacionados; (2) salir condicionalmente a la comunidad en ciertos casos particulares; y (3) residir en la comunidad a los efectos de recibir tratamiento médico, así como para trabajar o estudiar. Véase Artículo IV del Reglamento.

Un pase extendido, de acuerdo con el Artículo V del Reglamento, es un:

> "permiso concedido discrecionalmente por el Administrador de Corrección, [...] mediante el cual se autoriza la salida de confinados descompesados en su estado de salud, con prognosis de vida corta y condiciones fisiológicas limitantes para que residan en la comunidad mientras reciben tratamiento médico. Además podrá concederse a confinados que estén en proceso de integrarse a la fuerza laboral o a un programa de estudio en la comunidad". (Énfasis nuestro.)

La concesión de un pase extendido le pone fin a la reclusión del convicto, sujeto a ciertas condiciones que limitan su libertad. El propósito fundamental de este programa "es la más pronta reintegración del

convicto a la libre comunidad". (Énfasis nuestro.) <u>Pueblo</u> v. <u>Báez Ramos</u>, res. el 11 de octubre de 1999, 99 TSPR 153, 99 JTS 159, pág. 246.


                                   III

        Según indicáramos previamente, la Ley Núm. 70 releva de la inhabilidad para ocupar puestos públicos a todas las personas que les suspendan la ejecución de una sentencia o les concedan la libertad bajo palabra. Dicha legislación fue aprobada como "parte de una serie de estatutos [...] indicativos de una 'nueva' filosofía penológica que <u>tiene como objetivo la rehabilitación del delincuente</u>".[6] (Énfasis nuestro.) <u>Hernández Cruz</u> v. <u>Sria. de Instrucción</u>, ante, pág. 612. Básicamente, estuvo inspirada en la importancia que tiene para efectos de rehabilitación la obtención de un trabajo que le permita a la persona desenvolverse económicamente. Al respecto, la Comisión de lo Jurídico de la Cámara de Representantes señaló:

        "El espíritu de la legislación vigente para suspender la
        sentencia o para dejar en libertad a un recluso antes de cumplir
        su condena es ofrecer una oportunidad de rehabilitación al
        delincuente. Los organismos que administran estos programas
        realizan gestiones de toda índole encaminadas para lograr ese
        propósito. <u>Uno de los aspectos importantes en estas gestiones,
        a fin de lograr el mejor ajuste de los libertados en el seno
        de la sociedad, es el logro de un empleo retribuido que les
        permita desenvolverse económicamente y encaminar sus pasos
        hacia la total rehabilitación</u>. Resulta incongruente en la
        actualidad el que funcionarios gubernamentales gestionen

_____

[6] Entre estos estatutos se encontraban la Ley Núm. 259 del 3 de abril de 1946, conocida como Ley de Sentencias Suspendidas, y la Ley Núm. 295 de 10 de abril de 1956 la cual instituyó la libertad bajo palabra. <u>Hernández Cruz</u> v. <u>Sria. de Instrucción</u>, ante, pág. 612. Tanto la sentencia suspendida como la libertad bajo palabra son mecanismos orientados hacia la rehabilitación del delincuente. Véanse <u>Pueblo</u> v. <u>Bonilla Vázquez</u>, res. el 3 de junio de 1999, 99 JTS 92, pág. 1137; <u>Lebrón Pérez</u> v. <u>Alcaide, Cárcel de Distrito</u>, 91 D.P.R. 567, 570 (1964).

empleos para estos libertados en la empresa privada cuando el propio gobierno mantiene una situación legal que cierra las puestas a estas personas para el logro de un empleo gubernamental." (Énfasis nuestro.) Informe de la Comisión de lo Jurídico sobre el P. de la C. 824 de 21 de mayo de 1963, pág. 2.

La Ley Núm. 70 solamente hace mención de los mecanismos de sentencia suspendida y libertad bajo palabra. Ello, obviamente, se debe a que el programa de pases extendidos <u>no</u> existía para la fecha en que se aprobó dicha legislación, contrario a los mecanismos antes señalados. Sin embargo, tanto la sentencia suspendida como la libertad bajo palabra, <u>son mecanismos análogos al pase extendido</u>.[7] En esencia, todos ellos permiten a un convicto vivir en la libre comunidad, sujeto a ciertas condiciones y a un sistema de supervisión. Además, el fin perseguido por cada uno de estos mecanismos es la rehabilitación del delincuente. De igual forma, la Ley Núm. 70 fue aprobada fundamentalmente con un propósito rehabilitador.

A tenor con lo anterior, forzoso resulta concluir que la Ley Núm. 70 es de aplicación a aquellas personas acogidas al programa de pases extendidos de la Administración de Corrección. De lo contrario, se burlaría la intención del legislador al aprobar la Ley Núm. 70    -esto es la rehabilitación de la persona-, y la política pública de ofrecer a la rehabilitación la más alta prioridad entre los objetivos del Gobierno del Estado Libre Asociado de Puerto Rico, reconocida expresamente por la Ley

---

[7] En cuanto a las particularidades de la sentencia suspendida y la libertad bajo palabra, en <u>Pueblo</u> v. <u>Contreras</u>, 139 D.P.R. 604, 611 (1995), expresamos:

> **"Tanto la libertad bajo palabra como la sentencia suspendida permiten al convicto cumplir con su sentencia o parte de ella en libertad. Ambos regímenes le obligan a aceptar una serie de condiciones bajo la supervisión continua de un oficial probatorio y ambos sistemas de libertad están sujetos a ser revocados en caso de que el convicto**

Núm. 27[8] y por la Constitución de Puerto Rico.[9] Además, resolver de otra forma atentaría contra "[e]l derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, [...] principio inalienable del hombre, preexistente a la más antigua de las constituciones conocidas". Amy v. Adm. Deporte Hípico, 116 D.P.R. 414, 421 (1985). Véase también Hernández Cruz v. Sria. de Instrucción, ante, pág. 615.

Finalmente, es importante reiterar que toda legislación debe interpretarse tomando en consideración su fundamento racional o fin esencial y la política pública que la inspira. Véase: Ind. Cortinera Inc. v. P.R. Telephone Co., 132 D.P.R. 654, 661 (1993). Véase, además: Farmacias Moscoso, Inc. v. K-mart Corp., 138 D.P.R. 497, 502 (1995); Esso Standard Oil v. A.P.P.R., 95 D.P.R. 772, 784 (1968). Asimismo, "[a]l interpretar un estatuto tenemos la obligación de evitar los resultados irrazonables y las consecuencias absurdas". Toro Ruiz v. J.L.B.P., 134 D.P.R. 161, 170 (1993).

Por los fundamentos antes expresados, procede revocar el dictamen emitido por el Tribunal de Circuito de Apelaciones, ordenándose la reinstalación del Sr. Rigoberto Rodríguez Class al empleo que desempeñaba en la Autoridad de Energía Eléctrica y el pago de los salarios dejados de percibir por éste, desde el 29 de mayo de 1997, en dicha agencia.

---

viole las condiciones impuestas o cometa un nuevo delito."

[8] La Ley Núm. 27 obliga a la Administración de Corrección "[a] organizar los servicios de corrección al propósito de que la rehabilitación tenga la más alta prioridad entre los objetivos del Gobierno del Estado Libre Asociado". (Énfasis nuestro.) 4 L.P.R.A. sec. 1112(b).

[9] La Constitución de Puerto Rico dispone que "[s]erá política pública del Estado Libre Asociado [...] reglamentar las instituciones penales para que sirvan sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, sec. 19 de la Const. de P.R.

Se dictará Sentencia de conformidad.


                    FRANCISCO REBOLLO LÓPEZ
                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Energía Eléctrica

     Recurrida

       vs.                          CC-2000-278       CERTIORARI

Unión de Trabajadores de la
Industria Eléctrica y Riego

     Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 21 de marzo de 2001

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la resolución emitida en el presente caso por el Tribunal de Circuito de Apelaciones, ordenándose la reinstalación del Sr. Rigoberto Rodríguez Class al empleo que desempeñaba en la Autoridad de Energía Eléctrica y el pago de los salarios dejados de percibir por éste, desde el 29 de mayo de 1997, en dicha agencia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García no intervino.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo