La Juez Asociada Señora Rodríguez Rodríguez
emitió la opi-nión del Tribunal.
Nos corresponde resolver si en una acción por discrimen en el empleo instada al amparo de las disposiciones de la Ley Núm. 44 de 2 de julio de 1985 (Ley Núm. 44), 1 L.P.R.A. sec. 501 et seq., procede que el Estado responda por una suma igual al doble del importe de los daños su-fridos por el demandante. Específicamente, debemos deter-minar si la responsabilidad civil del Estado se extiende a la doble penalidad incorporada como remedio al amparo de la *674 referida ley, a pesar de que la Ley Núm. 104 de 29 de junio de 1955 (Ley Núm. 104), según enmendada, 32 L.P.R.A. see. 3077 et seq., prohíbe la imposición de daños punitivos contra el Estado.
i — 1
En el 1973 el Sr. José R. Guardiola Alvarez (demandan-te recurrido) comenzó a ejercer sus funciones como em-pleado del Departamento de Familia. En el 1996, luego de más de veinte años de servicio, el recurrido confrontó com-plicaciones en su salud, entre ellas la pérdida de visión ocasionada por el desprendimiento de la retina de su ojo derecho. Este suceso redujo su capacidad visual a la escasa visión que poseía en su ojo izquierdo, la cual debido a la condición de aniridia, se limitaba a un diez por ciento de la capacidad normal.
A raíz de dicha situación, el señor Guardiola solicitó al Departamento de Familia un acomodo razonable que le permitiera seguir ejerciendo sus funciones de empleo.(1) El acomodo solicitado consistía en un ajuste de horario, equipo de dictáfono y que se incorporara, como parte de las funciones de la secretaria que le asistía, el deber específico de leerle la documentación y la correspondencia.
Tras realizar múltiples gestiones sin lograr obtener el acomodo solicitado, el 21 de abril de 1998 el señor Guar-diola presentó ante el Tribunal de Primera Instancia una demanda contra el Departamento de la Familia y el Estado Libre Asociado de Puerto Rico, en la cual alegó discrimen por discapacidad al amparo de la Ley Núm. 44. Solicitó como remedio que la parte demandada realizara el aco-modo razonable provisto por la referida ley. Además re- *675 clamó una indemnización por los daños que, según sus ale-gaciones, le ocasionaron los actos culposos y negligentes de la parte demandada, al no proporcionarle el acomodo pre-viamente indicado.
Transcurridos más de dos años desde que se instó la demanda, aún el reclamo de acomodo razonable del señor Guardiola no había sido satisfecho, con excepción de la so-licitud del cambio de horario. El 31 de diciembre de 2000 el demandante cesó sus funciones de empleo al completar el término requerido para su jubilación del servicio público.
El 28 de septiembre de 2005 el Tribunal de Primera Instancia declaró “con lugar” la demanda y estimó los da-ños sufridos por el señor Guardiola en $50,000.(2) Además, interpretó que al amparo de la Ley Núm. 44 procedía im-poner el pago de una suma igual al doble del importe de los daños sufridos por el demandante, por lo cual la suma total otorgada ascendió a $100,000. El foro primario expuso en la sentencia el comentario siguiente: “Esperamos que dada esta experiencia el Departamento de la Familia tome las medidas correspondientes para evitar que situación como ésta no vuelvan [sic] a ocurrir con otros empleados impedidos”. Apéndice, pág. 49.
De dicha determinación recurrió la parte demandada ante el Tribunal de Apelaciones. Alegó, en síntesis, que in-cidió el foro primario al disponer el pago de una doble pe-nalidad, a pesar de que la Ley Núm. 104 prohíbe la impo-sición de daños punitivos contra el Estado. El foro apelativo determinó que la definición de patrono adoptada en la Ley Núm. 44 incluye al Estado y, como consecuencia, concluyó que éste responde por la doble penalidad que la referida ley provee para reclamaciones civiles contra patro- *676 nos que violen sus disposiciones. Por otro lado, dispuso que aplicaban los límites monetarios establecidos en la Ley Núm. 104 y, consecuentemente, modificó la sentencia ape-lada para reducir la cuantía concedida por el foro de ins-tancia a $75,000.
Inconforme con el dictamen del Tribunal de Apelacio-nes, acude ante este foro el Procurador General y señala que
[i]ncidió el tribunal de apelaciones al resolver que procede im-ponerle al estado el pago de una doble penalidad ante recla-maciones surgidas al amparo de la ley de impedidos de Puerto Rico, ello en contravención a la doctrina de inmunidad sobe-rana que le cobija y que precluye [sic], a su vez, la imposición de daños punitivos en su contra.
Aduce, que ante la ausencia de una renuncia expresa por parte del Estado a su inmunidad, no procede la doble penalidad impuesta por el foro primario y confirmada por el Tribunal de Apelaciones.(3) Sostiene, que es insuficiente que la Ley Núm. 44 haya adoptado por referencia los re-medios de la Ley Núm. 100 para que proceda la imposición de una doble penalidad contra el Estado. Ello, en conside-ración a la doctrina de inmunidad soberana y la Ley Núm. 104, la cual prohíbe que se otorguen daños punitivos en sentencias dictadas contra el Estado.
Expuestos los hechos que dan paso a la presente contro-versia, procedemos a resolver.
H — 1
Según se desprende de la relación de hechos que ante-cede, la controversia que nos ocupa requiere que interpre-temos varias disposiciones estatutarias en vías de resolver *677 un aparente conflicto entre ellas. Al adentrarnos en dicho análisis es nuestro interés armonizar, en la medida posi-ble, las disposiciones de ley pertinentes "en aras de obtener el resultado más sensato, lógico y razonable”. Sucn. Álvarez v. Srio. de Justicia, 150 D.P.R. 252, 276 (2000). Ello apoyándonos en los principios de hermenéutica que reite-radamente han guiado nuestra labor interpretativa.
En primer lugar, puntualizamos que al interpretar el alcance de las disposiciones de ley pertinentes, debemos tener presente que mediante la aprobación de un estatuto el legislador “[t]rata de corregir un mal, alterar una situación existente, complementar una reglamentación vigente, fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno”. Sucn. Álvarez v. Srio. de Justicia, supra, pág. 286, citando a R.E. Bemier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, Vol. 1, Cap. 34, págs. 245-246. Así pues, la interpretación que confiramos al lenguaje de una ley debe validar el propósito que tuvo el legislador al aprobarla, atribuyéndole el sentido que permita la realización del resultado que por ella se quiso obtener. García Comercial v. Srio. de Hacienda, 80 D.P.R. 765, 774 (1958). Véanse, además, Martínez v. D.A.Co., 163 D.P.R. 594, 603 (2004); Pizarro v. Nicot, 151 D.P.R. 944, 951 (2000). Ello requiere que las diferentes disposiciones de una ley sean interpretadas en conjunto atribuyéndole un sentido lógico y armónico que se ajuste al propósito que inspiró la acción legislativa. Pizarro v. Nicot, supra, pág. 951.
Iguales principios son relevantes en casos que requieren la interpretación de estatutos en conflicto. Así, he-mos afirmado que en vías de armonizar dos estatutos en aparente conflicto es preciso explorar "entre otros factores, los objetivos del legislador, las realidades sociales que motivaron el estatuto [y] el modo en que, en una sociedad *678 cambiante, pueden cumplirse mejor los valores que la ley entraña”. Badillo González v. F.S.E., 112 D.P.R. 665, 668 (1982); Hernández Cruz v. Sria. de Instrucción, 117 D.P.R. 606, 612 (1986).
Por otro lado, hemos sostenido que en caso de un conflicto irreconciliable entre varias disposiciones estatuarias deben aplicarse las normas siguientes: (1) si el conflicto surge “entre una nueva disposición y estatutos previos referentes a la misma materia, la nueva disposición será la que controle o prevalezca, ya que constituye la última expresión del legislador”, Díaz v. Srio. de Hacienda, 114 D.P.R. 865, 874 (1983); Pizarro v. Nicot, supra, pág. 951; (2) en caso de que un estatuto sea de carácter general y otro de carácter especial, rige el principio de interpretación de estatutos de que una ley de carácter especial prevalece sobre una de carácter general. Córdova & Simonpietri v. Crown American, 112 D.P.R. 797, 800 (1982). Dichas normas se enmarcan en la presunción general de que el legislador conoce el texto y el alcance de la legislación vigente al momento de tomar una nueva acción legislativa.
De acuerdo con estos principios, pasaremos a considerar las disposiciones de ley pertinentes a la controversia que nos ocupa.
I — I hH I — I
En nuestro ordenamiento, al amparo del fundamento de la doctrina de inmunidad del soberano, se ha sostenido que se requiere el consentimiento del Estado para que puedan instarse procedimientos judiciales en su contra.(4) Defendini Collazo et al. v. E.L.A., Cotto, 134 *679 D.P.R. 28, 40 (1993); Meléndez v. E.L.A., 81 D.P.R. 824, 826 (1960). Véanse, además: Berrios Román v. E.L.A., 171 D.P.R. 549 (2007); Santiago v. E.L.A., 163 D.P.R. 149 (2004). A partir de la incorporación de la referida doctrina por vía jurisprudencial, la Asamblea Legislativa ejerció su facultad de adoptar legislación dirigida a establecer las instancias en las cuales podrán presentarse reclamaciones judiciales contra el Estado así como la extensión del reme-dio disponible. Defendini Collazo et al. v. E.L.A., Cotto, supra, págs. 46-56. A tales efectos se aprobó la Ley Num. 104, la cual hemos calificado como una renuncia amplia, aunque condicionada, a la invocada protección de la inmu-nidad soberana. García v. E.L.A., 146 D.P.R. 725, 734 (1998); Defendini Collazo et al. v. E.L.A., Cotto, supra, pág. 48; Meléndez v. E.L.A., supra, pág. 827.
Mediante la Ley Núm. 104, el Estado consintió a ser demandado en daños y perjuicios por actuaciones y omisiones culposas o negligentes de sus funcionarios, empleados o agentes, en el desempeño de sus funciones.(5) Art. 2 de la Ley Núm. 104 (32 L.P.R.A. sec. 3077(a)). Véanse: Valle v. E.L.A., supra, pág. 17; García v. E.L.A., supra, págs. 734-735; Sánchez Soto v. E.L.A., 128 D.P.R. 497, 506 (1991); Meléndez v. E.L.A., supra, pág. 826. De igual forma, autorizó a que se instaran demandas fundadas en la Constitución, en cualquier ley o reglamento de Puerto Rico, o en *680 algún contrato con el Estado. Art. 2 de la Ley Núm. 104 (32 L.P.R.A. sec. 3077(c)); Valle v. E.L.A., supra, pág. 16.
La renuncia a la inmunidad del Estado, por medio de la Ley Núm. 104, “vino acompañada de limitaciones y salvaguardas procesales que rigen la forma en que un perjudicado podrá reclamar indemnización del soberano”. Berríos Román v. E.L.A., supra, pág. 557. Véase Valle v. E.L.A., supra, pág. 16. Entre las restricciones impuestas, se encuentran los límites a la cuantía que un reclamante puede obtener al demandar al Estado por las actuaciones negligentes de sus funcionarios. Art. 2 de la Ley Núm. 104, supra. Los límites vigentes, tras la enmienda introducida por la Ley Núm. 30 de 25 de septiembre de 1983, corresponden a $75,000 para una causa de acción y $150,000 en caso de varios reclamantes o un reclamante con varias causas de acción. Íd. Berríos Román v. E.L.A., supra; Defendini Collazo et al. v. E.L.A., Cotto, supra.
Otra limitación importante de la Ley Núm. 104 consiste en que ésta excluye de su ámbito de aplicación “las actua-ciones intencionales o constitutivas de delito realizadas por funcionarios del Estado y las actuaciones discreciona-les de dichos funcionarios en el desempeño de sus deberes”. Berríos v. E.L.A., supra, pág. 556; Santiago v. E.L.A., supra, pág. 165; Art. 6 de la Ley Núm. 104 (32 L.P.R.A. sec. 3081).
Como una tercera restricción, de particular relevancia para la presente controversia, el Art. 8 de la Ley Núm. 104 (32 L.P.R.A. see. 3083) dispone que “[l]a sentencia contra el Estado no incluirá en ningún caso el pago de intereses por periodo alguno anterior a la sentencia ni concederá daños punitivos”. En relación con esta disposición, es importante mencionar que el concepto de daños punitivos comprende los “daños” otorgados en exceso a la indemnización corres-pondiente a los daños que experimentó el demandante, cuya imposición persigue castigar al causante de un daño y disuadirle de la repetición de su conducta. R.D. Pi *681 zarro, Daño moral: prevención, reparación y punición, 2da ed., Buenos Aires, Ed. Hammurabi, 2004, pág. 524.
Nuestro ordenamiento, como principio general, rechaza la imposición de daños punitivos. C.J. Irizarry Yunqué, Responsabilidad Civil Extracontractual, 7ma ed., [ed. autor], 2007, Cap. VI, pág. 340. Además, según expusimos previamente, al aprobar la Ley Núm. 104 el legislador se preocupó por establecer, específicamente, que en el contexto de reclamaciones contra el Estado las sentencias no incluirían la imposición de este tipo daños.(6) Art. 8 de la Ley Núm. 104, supra; Ortiz y otros v. Mun. de Lajas, 153 D.P.R. 744, 755 (2001).
Aunque la norma imperante rechaza que se otorguen daños punitivos, como excepción, se ha reconocido que pro-cede su imposición cuando así se establece por medio de un estatuto especial. Irizarry Yunqué, op. cit., pág. 340. A modo de ejemplo, la Ley Núm. 100 de 30 de junio de 1959 (Ley Núm. 100), 29 L.P.R.A. see. 146 et seq., impone res-ponsabilidad civil a todo patrono que incurra en una prác-tica discriminatoria por una suma igual al doble del im-porte de los daños que la acción ilegal haya causado al empleado. Art. 1 de la Ley Núm. 100 (29 L.P.R.A. see. 146); Belk v. Martínez, 146 D.P.R. 215, 240 (1998).
De igual forma, la Asamblea Legislativa ha adoptado legislación especial en la cual, por vía de excepción, ha ex-tendido la responsabilidad civil del Estado al pago de da-ños punitivos. Así, al aprobar la Ley Núm. 69 de 6 de julio *682 de 1985 (Ley Núm. 69), 29 L.P.R.A. see. 1321 et seq., se dispuso lo siguiente:
Toda persona, patrono y organización obrera según se defi-nen en este capítulo, que incurra en cualquiera de las prohi-biciones del mismo:
(a) Incurrirá en responsabilidad civil:
(1) Por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo .... Art. 21 de la Ley Núm. 69 (29 L.P.R.A. see. 1341).
La definición de persona que dicta el Art. 2 de la Ley Núm. 69 (29 L.P.R.A. sec. 1322(A)), dispone que el término persona “[i]ncluye a persona natural o jurídica; a uno o más individuos, sociedades, asociaciones, corporaciones, representantes legales, fideicomisarios, síndicos, gobier-nos, agencias del Gobierno, subdivisiones políticas, unio-nes obreras, organizaciones no incorporadas”. De acuerdo con esta definición, sostuvimos en Rivera Briceño v. Rodrí-guez, 129 D.P.R. 669 (1991), que la causa de acción por discrimen en el empleo por razón de sexo, establecida en la Ley Núm. 69, está disponible para los empleados de agen-cias del Gobierno. En dicho caso, en el cual la demandante era empleada de una agencia del gobierno, resolvimos que el remedio disponible al amparo de la referida ley consistía en una suma igual al doble de los todos daños que hubiese generado el discrimen. Íd., pág. 677.
Un esquema similar al de la Ley Núm. 69 se adoptó en la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. see. 155 et seq.), dirigida a prohibir y penalizar el hostigamiento sexual en el empleo. Esta ley, la cual aplica al Gobierno del Estado Libre Asociado de Puerto Rico, impone responsabi-lidad civil por una suma igual al doble del importe de los daños que sufra la víctima. Arts. 2 y 11 de la Ley Núm. 69 (29 L.P.R.A. sees. 155a y 155j).
Ciertamente, la Asamblea Legislativa ostenta la facul-tad de variar los contornos de responsabilidad del Estado establecidos en la Ley Núm. 104 y extender sus límites mediante legislación especial; incluso en lo referente a la *683 imposición de daños punitivos. Debemos pues, determinar, si el legislador, por medio la Ley Núm. 44, según enmen-dada, consintió a la imposición de una doble penalidad contra el Estado como excepción a la norma general que pro-híbe la imposición de daños punitivos en su contra. Al asumir esta encomienda, debemos otorgar toda la exten-sión a la renuncia a la inmunidad del Estado que haya dispuesto el Poder Legislativo y, a su vez, evitar imponerle límites al alcance de dicha inmunidad en tanto la Asam-blea Legislativa haya estimado conveniente retenerla. Montes v. Fondo del Seguro del Estado, 87 D.P.R. 199 (1963). Ello requiere que evaluemos detenidamente las dis-posiciones pertinentes de la referida Ley Núm. 44.
> I — i
La legislación laboral vigente regula extensivamente el comportamiento de los patronos y los empleados: establece salarios mínimos y requisitos para garantizar la seguridad y salud en el trabajo, regula las relaciones obrero-patronales y, entre otros aspectos, establece causas de acción contra el discrimen en el empleo. Ortiz y otros v. Mun. de Lajas, supra, págs. 753-754. De igual forma, contamos con legislación especial que regula los procedimientos para tramitar casos de discrimen en el empleo, así como los remedios que tendrá disponible una persona que ha sido objeto de discrimen laboral.
Entre la legislación concerniente al discrimen en el empleo, se encuentra la Ley Núm. 44, la cual se adoptó con el objetivo de garantizar la igualdad en circunstancias en las cuales personas con discapacidad física, mental o sensorial enfrentan tratos discriminatorios que limitan su oportunidad de participar, desempeñarse y competir adecuadamente en el campo laboral. Exposición de Motivos de la Ley Núm. 44 (1985 Leyes de Puerto Rico 166); Ríos v. Cidra Mfg. Oper. of P.R., Inc., 145 D.P.R. 746, 749 (1998).
*684 En vías de alcanzar el propósito antes reseñado, el Art. 5 de la Ley Núm. 44 (1 L.P.R.A. see. 505) prohíbe que tanto las instituciones públicas como las empresas privadas ejer-zan, pongan en vigor o utilicen procedimientos, métodos o prácticas discriminatorias de empleo por razón de impedi-mentos físicos, mentales o sensoriales. Esta prohibición se extiende desde la etapa de reclutamiento hasta los diferen-tes términos, condiciones y privilegios de empleo, entre ellos: la compensación, los beneficios marginales y las faci-lidades de acomodo razonable. Id.
Es preciso notar que la prohibición de discrimen por razón de discapacidad establecida en el Ley Núm. 44 se dirige no sólo al sector laboral de la empresa privada, sino que incluyó a las instituciones públicas. Esto queda claramente establecido en la definición de patrono adoptada en la Ley Núm. 44, la cual incluyó: “[al] Estado Libre Asociado de Puerto Rico, sus agencias e instrumentalidades [sic] y sus subsidiarias, los municipios y sus agencias e instrumentalidades [sic]”. Art. 1 de la Ley Núm. 44 (1 L.P.R.A. sec. 501(h)). Consecuentemente, las prohibiciones y exigencias que la Ley Núm. 44 impone a un patrono se extienden a las entidades públicas antes mencionadas.
Entre dichas exigencias, la referida ley requiere que se tomen medidas afirmativas que viabilicen la participación e integración adecuada de las personas discapacitadas al campo laboral. Específicamente, el Art. 9 de la Ley Núm. 44, incorporado por enmienda mediante la Ley Núm. 105 de 20 de diciembre de 1991, exige que tanto el Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias y dependencias, corporaciones públicas o cuasipúblicas, municipios, así como las empresas privadas, realicen acomodos razonables que permitan a las personas discapacitadas ejercer sus funciones de empleo al máximo de su productividad. Art. 9 de la Ley Núm. 44 (1 L.P.R.A. see. 507a). El acomodo requerido consiste en “el ajuste lógico *685 adecuado o razonable que permite o faculta a una persona cualificada para el trabajo, con limitaciones físicas, menta-les o sensoriales ejecutar o desempeñar las labores asigna-das a una descripción o definición ocupacional”.(7) Art. 1 de la Ley Núm. 44 (1 L.P.R.A. sec. 501(b)). La responsabilidad de tomar dicha acción afirmativa es de tal envergadura que sólo se exime a un patrono de su cumplimiento en ca-sos en que el acomodo requerido resulte en un esfuerzo económico extremadamente oneroso. Art. 9 de la Ley Núm. 44 (1 L.P.R.A. sec. 507a).
Luego de que se estableciera mediante enmienda el requisito de realizar acomodos razonables, se aprobó la Ley Núm. 53 de 1992, para enmendar, nuevamente, la Ley Núm. 44 y disponer, en lo pertinente, que:
Los remedios, facultades, autoridad y procedimientos esta-blecidos en las sees. 146, 147, 147a, 148 y 149 del Título 29 estarán disponibles para el Secretario del Trabajo y Recursos Humanos y para cualquier persona que entienda que ha su-frido discrimen en el empleo por razón de impedimento en violación a las disposiciones de las sees. 501 et seq. de este título. Art. 13 de la Ley Núm. 44 (1 L.RR.A. see 511).
Así, se incorporaron a la Ley Núm. 44, los remedios y procedimientos establecidos en la Ley Núm. 100. Rivera Flores v. Cía. ABC, 138 D.P.R. 1, 5 (1995). Entre ellos, se adoptó el remedio provisto en el Art. 1 de la Ley 100, supra, el cual dispone, en lo pertinente, que todo patrono que in-curra en la conducta discriminatoria prohibida por dicha ley:
(a) Incurrirá en responsabilidad civil:

(1) Por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo-,

*686 (2) o por una suma no menor de quinientos dólares ($500) ni mayor de dos mil dólares ($2,000), a discreción del tribunal, si no se pudieren determinar daños pecuniarios;
(3) o el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de quinientos dólares ($500) .... (Én-fasis suplido.) Art. 1 de la Ley Núm. 100, supra.
Dicho artículo, en su aplicación a reclamaciones al amparo de la Ley Núm. 100, establece una causa de acción contra todo patrono que discrimine por razón de edad, raza, color, sexo, origen social o nacional, condición social o afiliación política o religiosa. Irizarry Yunqué, op. cit., pág. 216. La definición de patrono adoptada en la Ley Núm. 100 incluyó a aquellas agencias o dependencias del Gobierno de Puerto Rico que operen como negocios o empresas privadas, mas no a aquellas que no operen como negocio privado. Rivera Briceño, v. Rodríguez, supra, págs. 675-676. Hemos expuesto que ello responde a que la Ley Núm. 100 tiene como objetivo principal “proteger a los empleados de la empresa privada contra todo tipo de discrimen aun cuando, por excepción, se extiende la protección a los empleados de las agencias o instrumentalidades [sic] del Gobierno que operan como negocios o empresas privadas”. (Enfasis suprimido.) Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486, 508 (1990).
Cabe enfatizar que a diferencia de la Ley Núm. 100, la definición de patrono adoptada en la Ley Núm. 44 incluye al Estado Libre Asociado de Puerto Rico, sus agencias y dependencias, y a los municipios. Dicha distinción implica que las obligaciones y prohibiciones de la Ley Núm. 44 les son exigibles y que de igual forma estarían disponibles frente a dichas entidades públicas los remedios que la referida ley provee por violaciones a sus disposiciones.
En síntesis, mediante el Art. 13 de la Ley Núm. 44, supra, el legislador expresamente estableció que los remedios del Art. 1 de la Ley Núm. 100, supra, estarían dis- *687 ponibles para cualquier persona que sufra discrimen en el empleo por razón de su discapacidad en violación a la Ley Núm. 44. Como una consecuencia lógica de dicha disposi-ción, la doble penalidad que forma parte del remedio pro-visto por el Art. 1 de la Ley Núm. 100, supra, se adoptó como un remedio disponible para reclamaciones por viola-ciones a la Ley Núm. 44. El Estado como patrono, al am-paro de esta última ley, está sujeto a cumplir con las obli-gaciones y prohibiciones de la ley, así como a la imposición de responsabilidad civil por violaciones a tales exigencias.
Debemos determinar si por razón del texto de la Ley Núm. 104 y la doctrina de inmunidad, la responsabilidad civil del Estado al amparo de la Ley Num. 44 no se ex-tiende al pago de la suma correspondiente al doble del im-porte de los daños sufridos por el agraviado. Previo a tal determinación estimamos pertinente reseñar una en-mienda reciente introducida a la Ley Núm. 44, por medio de la Ley Núm. 355 de 16 de septiembre de 2004 (Ley Núm. 355).
Mediante la Ley Núm. 355, la Asamblea Legislativa incorporó los Arts. 14 y 15 a la Ley Núm. 44 (1 L.P.R.A. sees. 511a y 511b), para reforzar la normativa dirigida a proteger los derechos de las personas discapacitadas y rechazar interpretaciones restrictivas de la ley en detrimento de sus necesidades. Exposición de Motivos de la Ley Núm. 355 (2004 (Parte 2) Leyes de Puerto Rico 2426). Se enfatizó que la Ley Núm. 44 debe interpretarse según el principio de hermenéutica que requiere que un estatuto sea interpretado según "el fin social que los inspiró, sin desvincularlos de la realidad y del problema social humano que persiguen resolver”. Id., pág. 2428.
El Art. 14, incorporado a la Ley Núm. 44, exige que este estatuto sea interpretado “de la forma más beneficiosa para las personas con impedimentos”. Así, dispone que “[t]odas las ramas gubernamentales y las personas natu-rales o jurídicas, al interpretar esta legislación, deben uti- *688 lizar una interpretación liberal y no restrictiva”. Art. 14 de la Ley 44 (1 L.P.R.A. sec. 511a).
De igual forma, el Art. 15 de la Ley Núm. 44 requiere que tanto los tribunales como las agencias gubernamenta-les promuevan una interpretación liberal de los estatutos relacionados con los derechos de las personas discapacita-das de modo que se adelante el fin social de proteger, defender y vindicar sus derechos. Art. 15 de la ley Núm. 44, supra.
Sin soslayar estos principios de interpretación incorpo-rados por el legislador en la Ley Núm. 44 y en atención a la discusión de la legislación aplicable que antecede, procede-mos a evaluar la corrección de la sentencia recurrida.
V
El Tribunal de Primera Instancia determinó que el se-ñor Guardiola Álvarez, mientras era empleado del Depar-tamento de la Familia, solicitó a la agencia un acomodo razonable el cual no se confirió, salvo en lo referente al cambio de horario, a pesar del transcurso de varios años y sin ninguna razón legítima para ello. Dispuso que el de-mandante, como consecuencia del discrimen del cual fue objeto, sufrió daños por angustias mentales cuya compen-sación estimó en $50,000. Además, determinó que al am-paro de la Ley Núm. 44 procedía imponer a la parte de-mandada el pago de una doble penalidad.
Según expusimos anteriormente, el Tribunal de Apela-ciones confirmó la sentencia del foro primario en lo refe-rente a que en reclamaciones contra el Estado por violacio-nes a la Ley Núm. 44 procede la imposición de una doble penalidad. No obstante, modificó la sentencia apelada para ajustar la cuantía concedida al límite de $75,000 que se establece en la Ley Núm. 104 para una causa de acción. Estimamos que es correcta la determinación del foro apelativo.
*689 Ciertamente, el legislador al incorporar los remedios de la Ley Núm. 100 a la Ley Núm. 44 expresamente adoptó como un remedio disponible contra violaciones a esta última ley la concesión de una suma igual al doble del importe de los daños sufridos por el agraviado. Una interpretación lógica del texto de la Ley Núm. 44 nos lleva forzosamente a concluir que el Estado, como patrono al amparo de la Ley Núm. 44, está sujeto a responder por las violaciones de dicha ley por un importe igual al doble de los daños sufridos por el demandante. Nos encontramos, pues, ante una ley especial y posterior a la aprobación de la Ley Núm. 104, en la cual el legislador estimó conveniente conceder, por vía de excepción, daños punitivos en sentencias dictadas contra el Estado.
Entendemos que el Poder Legislativo bien pudo estimar que la imposición de daños punitivos contra el Estado por violaciones a las disposiciones de la Ley Núm. 44 serviría de disuasivo para que en las entidades públicas se tomen las medidas necesarias para cumplir con las disposiciones de esta ley. De forma tal, que se adelante su propósito de evitar el discrimen en contra de las personas discapacita-das y ampliar la. oportunidad de éstos de participar, com-petir y desempeñarse adecuadamente en el campo laboral.
Por otro lado, al considerar la Ley Núm. 44 no encontra-mos en su texto disposición alguna que nos lleve a concluir que la Asamblea Legislativa varió los límites monetarios de responsabilidad que la Ley Núm. 104 dispone para sen-tencias dictadas contra el Estado. Concluimos que actuó correctamente el foro apelativo al modificar la sentencia apelada para ajustar la cuantía concedida al demandante al límite de $75,000.
Consideramos, pues, que el resultado al que arribó el Tribunal de Apelaciones no sólo se ajusta al texto de la Ley Núm. 44, sino que responde al fin social que ésta persigue. A su vez, cumple con la exigencia del legislador de que el texto de la referida ley sea interpretado de la forma más *690 favorable a la vindicación de los derechos de las personas discapacitadas que por razón de ello sufren discrimen en el contexto laboral.
Recordemos que el trabajo es un rasgo que nos define como individuo. Es un medio de sustento y de satisfacción de nuestras necesidades más básicas. Pero es también, una actividad que sirve de afirmación de nuestra propia identidad para con nosotros mismos y frente a otros. Es un derecho de fundamental importancia. Debemos entonces procurar, que quienes lo niegan o lo dificulten injustificadamente por motivos de una discapacidad del trabajador respondan económicamente por el acto discriminatorio de la forma que el legislador dispuso en la ley.
En suma, resolvemos que al amparo de la Ley Núm. 44 procede que el Estado responda por una suma igual al do-ble del importe de los daños sufridos por el señor Guardiola Álvarez hasta el tope de $75,000 establecido por la Ley Núm. 104.
En virtud de los pronunciamientos que anteceden, con-firmamos la sentencia recurrida.

 Según determinó el foro de instancia, la primera de las gestiones realizadas por el señor Guardiola para solicitar un acomodo razonable consistió en una carta de 11 de julio de 1996, dirigida al Director Regional del Departamento de la Familia de Arecibo.

 El Estado Libre Asociado no compareció a la Conferencia con Antelación a Juicio señalada por el Tribunal de Primera Instancia. El foro primario le concedió un término de 10 días para mostrar causa por la cual no debían eliminarse sus alega-ciones y señaló la celebración de la vista para una nueva fecha. A dicho señalamiento tampoco compareció la representación del Estado, por lo que el tribunal procedió a eliminar sus alegaciones y celebrar la vista en su fondo en rebeldía.

 El Procurador General cita Lane v. Pena, 518 U.S. 187 (1996), para sostener que de acuerdo con la doctrina de inmunidad soberana, una renuncia a ésta por parte del Estado, debe surgir “inequívoca, expresa y literalmente del texto de la ley”; por lo cual afirma que los tribunales carecen de la facultad para extender la renuncia más allá de lo ordenado por la Rama Legislativa. Petición de Certiorari, pág. 11.

 En Valle v. E.L.A., 157 D.P.R. 1, 16 esc. 14 (2002), reconocimos que la doc-trina de inmunidad del soberano sufre de una gran erosión y los fundamentos sobre los cuales descansa son objeto de mucho debate. Sobre este particular en el informe de la Comisión de lo Jurídico Civil, referente al proyecto de ley que culminó en la aprobación de la Ley Núm. 104, se expresó lo siguiente: “[la] Comisión cree que una legislación de esta naturaleza es altamente necesaria y deseable en Puerto Rico ya *679 que la vieja idea de que no se podía demandar al Estado sin su previo consentimiento se ha ido descartando.” 3 Diario de Sesiones de la Asamblea Legislativa (Senado), Vol. VI, pág. 1787 (1955), citado en Defendini Collazo et al. v. E.L.A., Cotto, 134 D.P.R. 28, 48-49 (1993).

 Simultáneamente, mediante la Ley Núm. 104 se enmendó el Art. 1803 del Código Civil, 31 L.P.R.A. see. 5142, en lo referente a la responsabilidad del Estado por los perjuicios causados por sus empleados en el ejercicio sus funciones. Romero Arroyo v. E.L.A., 127 D.P.R. 724, 747 (1991). Se dispuso entonces, que el Estado sería responsable, por los peijuicios causados por sus empleados en ocasión de sus funcio-nes, en las mismas circunstancias y condiciones en que lo sería un ciudadano particular. Art. 1803 del Código Civil, supra; Valle v. E.L.A., supra, pág. 15; Romero Arroyo v. E.L.A., supra, pág. 747. Hemos señalado que la referida disposición debe ser interpretada en concordancia con las limitaciones y restricciones establecidas en las demás disposiciones de la Ley Núm. 104. Valle v. E.L.A., supra, pág. 16.

 En virtud de dicha disposición hemos rechazado, por constituir daños puni-tivos, la imposición de honorarios de abogado contra el Estado. Ortiz v. Mun. de Lajas, 153 D.P.R. 744, 755 (2001); Colondres Vélez v. Bayrón Vélez, 114 D.P.R. 833 (1983). No obstante, señalamos en Ortiz y otros v. Mun. de Lajas, supra, que en el contexto laboral, el Art. 2 de Ley Núm. 402 de 12 de mayo de 1950 (32 L.P.R.A. see. 3115), exige la imposición de honorarios de abogado. Tras determinar que la recla-mación instada contra el municipio no se presentó al amparo de dicha legislación especial, resultó innecesario determinar si el Municipio de Lajas debía considerarse patrono para efectos de la Ley Núm. 12, sujeto a la imposición de honorarios de abogado. Ortiz y otros v. Mun. de Lajas, supra, pág. 755 esc. 1.

 Establece el Art. 1 de la Ley Núm. 44 (1 L.P.R.A. sec. 501(b)) que el acomodo razonable: “Incluye ajustes en el área de trabajo, construcción de facilidades físicas, adquisición de equipo especializado, proveer lectores, ayudantes, conductores o in-térpretes y cualquier otra acción que razonablemente le facilite el ajuste a una persona con limitaciones físicas, mentales o sensoriales en su trabajo y que no repre-senta un esfuerzo extremadamente oneroso en términos económicos.”