*1038 TEXTO COMPLETO DE LA SENTENCIA
Mediante recurso de revisión judicial comparece el Sr. Héctor Rivera Rodríguez (recurrente). Nos solicita que revoquemos la Resolución emitida el 30 de enero de 2009 y notificada el 22 de junio de 2009, por la Comisión de Investigación, Procesamiento y Apelación (CIPA). La Resolución recurrida denegó el recurso de apelación del recurrente y confirmó su expulsión de la Administración de Corrección (AC.)
Por los fundamentos que a continuación expresamos, se confirma la Resolución recurrida.
I
Según se desprende del expediente ante nuestra consideración, el 16 de enero de 2002, el recurrente irrumpió en la residencia de su esposa, la Sra. María Antonia López Estremera y sostuvo con ésta relaciones sexuales no consentidas, utilizando para ello la fuerza y/o violencia. El 4 de marzo de ese mismo año se le radicaron al recurrente, ante el Tribunal de Primera Instancia, Sala de Utuado (TPI), dos (2) acusaciones por tentativa de infracción al Artículo 3.5 de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada y conocida como la Ley para la Intervención y Prevención con la Violencia Doméstica (Ley 54), 8 L.P.R.A. see. 635 (agresión sexual conyugal); una acusación por violación al Artículo 171 del Código Penal, (escalamiento agravado); y una acusación por violación al Artículo 4.05 de la Ley Núm. 404 del 11 de septiembre de 2000, según enmendada y conocida como Ley de Armas, 25 L.P.R.A. sec. 458d (portación y uso de armas blancas).
Las acusaciones por alegadamente haber cometido el delito de tentativa de infracción al Artículo 3.5 de la Ley 54, supra, señalaban lo siguiente:
El referido imputado, Héctor Rivera Rodríguez, allá en o para el 16 de enero de 2002, y en Utuado, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de Utuado, ilegal, voluntaria, maliciosa y criminalmente intentó incurrir en una relación sexual no consentida con María Antonia *1039 López Estremera, quien es su cónyuge, mediante empleo de la fuerza, violencia, intimidación y/o amenaza de grave daño corporal consistente en que mientras ésta se encontraba en la residencia, éste la sorprendió agarrándola por el cuello y tapándole la boca, tirándola sobre una mesa de herramientas, despojándola de su ■ropa y sosteniendo relaciones sexuales con ésta sin su consentimiento e intimidándola con un destornillador. El recurrido, allá en o para el 16 de enero de 2002, y en Utuado, Puerto rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala Superior de - Utuado, Puerto Rico, ilegal, voluntaria, maliciosa y criminalmente, intentó incurrir en una relación sexual no consentida con María Antonia López Estremera, quien es su cónyuge, mediante empleo de fuerza, violencia, intimidación y/o amenaza de grave daña corporal consistente en que penetró la residencia de ésta; mediante la fuerza, la llevó al dormitorio tratando de despojarla de su ropa, no logrando su objetivo por causas ajenas a su voluntad, ya que los tres (3) menores se personaron a la habitación.”
El 24 de abril de 2002, se encontró culpable al recurrente de los delitos imputados. El 20 de junio de 2002, el TPI emitió una Resolución concediéndole al recurrente los beneficios del régimen de libertad a prueba, condicionado a que participase en un programa de reeducación y readiestramiento para personas que incurren en conducta maltratante en relaciones de pareja por un período de cinco (5) años. El TPI exoneró al recurrente de la pena especial y señaló que las sentencias serían concurrentes entre sí. Además, estableció las condiciones que el recurrente debía cumplir.
El 14 de mayo de 2003, la AC le remitió al recurrente una comunicación escrita notificándole su intención de destituirlo de su puesto de trabajo por haber sido encontrado culpable de cometer dos (2) delitos graves y sentenciado a cumplir una pena de cinco (5) años en libertad a prueba. Además, se apercibió al recurrente del derecho que le asistía a solicitar una vista administrativa ante un Oficial Examinador. El recurrente solicitó la vista administrativa que fue celebrada el 1 de julio de 2004, ante la Oficial Examinadora, Lydia Ramírez Álvarez. Mediante carta emitida el 8 de septiembre de 2004 y notificada el 17 de noviembre de 2004, la AC le comunicó al recurrente su decisión de confirmar la expulsión del puesto que éste ocupaba como Oficial Correccional I. Igualmente, le notificó su derecho a solicitar apelación ante la Comisión de Apelación del Sistema de Administración de Recursos Humanos del Servicio Público (en adelante “CASARH”) y el plazo disponible para ello.
Inconforme con la determinación de la AC, el recurrente presentó un escrito de apelación ante la CASARH. Al cabo de varias incidencias procesales, dicho organismo emitió una Resolución desestimando la apelación por carecer de jurisdicción para atenderla. CASARH le informó al recurrente que la entidad con jurisdicción exclusiva para atender su reclamo era la CIPA.
El 2 de julio de 2007, el recurrente presentó un escrito de apelación ante la CIPA. Oportunamente, la AC presentó su Contestación a dicho recurso. Luego de varios trámites procesales, la Oficial Examinadora le ordenó a las partes celebrar una reunión entre abogados y someter el informe de conferencia de abogados en conjunto. El referido informe fue radicado el 7 de julio de 2006. El 20 de julio de igual año, la CIPA emitió una Resolución señalando la celebración de la vista para el 16 de noviembre de 2006.
El 15 de noviembre de 2006, la AC presentó un Memorando de Derecho señalando que el acto cometido por el recurrente era altamente reprochable e incompatible con las funciones de supervisar, custodiar y .contribuir a la rehabilitación de los confinados, y que lo inhabilitaba para ocupar un puesto de oficial de custodia. Además, indicó que por la naturaleza de las funciones que ejercía un oficial correccional era requisito del puesto el portar un arma de reglamento. Explicó, además, que debido a la conducta delictiva, descontrolada y carente de respeto a la dignidad humana que el recurrente exhibió, constituía un riesgo autorizarle portar un arma.
A su vez, la AC expresó que la apelación incoada se habíá tornado académica, toda vez que había quedado *1040 vacante el puesto que ocupaba el recurrente. Por último, señaló que el recurrente no podía ser reinstalado a ningún puesto hasta que se sometiera al procedimiento de habilitación establecido en la Ley Núm. 184 de 3 de agosto de 2004, conocida como la Ley para la Administración de Recursos Humanos en el Servicio Público del Estado (Ley de Personal), 3 L.P.R.A. sees. 1461 et seq.
La CIPA re-señaló la vista para el 23 de junio de 2008. A la misma comparecieron las partes representadas por sus respectivos abogados. Los letrados presentaron sus argumentos de derecho y sometieron una estipulación sobre los hechos no controvertidos. Así las cosas, la CIPA determinó que la apelación interpuesta debía interpretarse como una controversia de estricto derecho. Señaló que lo que debía dirimirse era si aplicaba o no el procedimiento de habilitación establecido en la Ley de Personal, supra. Por ello, ordenó a las partes fundamentar por escrito su posición en tomo a la ley aplicable a la fecha de la destitución del recurrente.
El 11 de julio de 2008, la AC presentó un “Memorando de Derecho Enmendado” reiterando que el recurrente estaba inhabilitado para ocupar el puesto de oficial de custodia. Señaló que el recurrente no podía ser reinstalado a ninguna clase de puesto en el servicio público hasta que no se sometiera al procedimiento de habilitación y se emitiera una determinación final al respecto. Por ello, le solicitó a la CIPA que desestimara la apelación incoada por no existir un remedio adecuado en derecho que concederle al recurrente. El recurrente no replicó el Memorando de la agencia recurrida.
Así las cosas, el 30 de enero de 2009, la CIPA emitió una Resolución y confirmó la sanción impuesta por la AC. A esos efectos, concluyó lo siguiente:
“El apelante independientemente de que se haya acogido a un programa de desvío, cierto es que violó una ley de gran interés social desplegando un comportamiento indigno de un funcionario público y en consecuencia lesivo ai buen nombre de la Administración de Corrección y del Gobierno de Puerto Rico. Aunque no mediara convicción, la admisión de unos hechos en los que medió violencia, ya sea física o psicológica, lo inhabilita para continuar ejerciendo el cargo que ostentaba. Rivera Rodríguez era un funcionario con capacidad de arresto autorizado a portar armas y a imponer el orden en la institución carcelaria. A tales efectos, el Reglamento de Oficiales de Custodia establece entre las funciones de un oficial correccional la “conservación del orden y la disciplina en las instalaciones de la Administración” y la “protección de la persona y la propiedad en todo momento en las instalaciones de la Administración y mientras se encuentren con confinados en la libre comunidad.” Quien no puede en su entorno familiar controlar su ira, sus impulsos, en fin, que no tiene control de sí mismo, no está facultado para hacerlo con extraños.”
Rivera Rodríguez carece del carácter y las aptitudes necesarias para ser miembro del Cuerpo de Oficiales de Custodia de la Administración de Corrección. El apelante faltó a sus deberes olvidando que el mantener el orden, el control y la protección de los demás empieza en su casa y con su conducta manchó la dignidad de la Administración de Corrección. No es pertinente para ese foro si el apelante se acogió a algún programa de desvío o a cualquier otro beneficio ni las razones que tuvo para hacerlo. No está en duda el que Rivera Rodríguez hizo una alegación en la que admite culpabilidad por los hechos constitutivos de violencia doméstica. Para este foro no es determinante la modalidad bajo la cual admite su culpa. Con tratarse de conducta constitutiva de violencia doméstica nos es suficiente para disciplinarlo. (...) Los hechos admitidos por el apelante constituyen faltas que de ser pasadas por alto atenían contra la seguridad e integridad de los confinados y del público en general.
Inconforme, el 22 de julio de 2009, el recurrente instó la revisión administrativa de epígrafe y adujo que la CIPA cometió tres (3) errores, a saber:
“(1) Erró la CEPA al no resolver el asunto de la aplicación o no del Reglamento de Habilitación, basando su Resolución exclusivamente en los hechos estipulados por las partes en contravención con lo resuelto e *1041 informado a las partes en ocasión de la vista administrativa del 24 de junio de 2008.
(2) Erró la AC y la CIPA al fundamentar sus determinaciones en disposiciones reglamentarias incorrectas violentando así el debido proceso de ley del recurrente.
(3) Erró la CEPA al no tomar en consideración los elementos atenuantes presentes en el caso que les permitía tomar una medida disciplinaria menos severa.”
Mediante Resolución dictada y notificada el 14 y 18 de agosto de 2009, respectivamente, le ordenamos a la AC a cumplir con la Regla 63 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B, R. 63. No obstante, la AC, representada por la Procuradora General, presentó tres (3) solicitudes de prórroga para poder presentar su escrito en oposición. El mismo día en el que se presentó la última solicitud de término adicional, este Tribunal emitió una Resolución indicándole a la agencia recurrida que verificara su Resolución del 27 de octubre de 2009 y que de no presentar su escrito, resolvería sin su comparecencia. No obstante, esta Resolución fue notificada por la vía ordinaria el 24 de noviembre de 2009 y recibida en la Oficina de la Procuradora General el 30 de noviembre siguiente. Es decir, la denegatoria de la tercera prórroga solicitada por la AC fue notificada transcurrido el plazo del que disponía para comparecer. Por consiguiente, la AC no pudo cumplir adecuadamente con lo ordenado por este Tribunal.
El 1 de diciembre del 2009, la AC presentó una “Moción Urgente de Reconsideración”. Nos solicitó la reconsideración de nuestra determinación del 18 de noviembre de 2009 y se le permitiera presentar su escrito en oposición. Acogemos la reconsideración solicitada y la declaramos Ha Lugar. Por consiguiente, aceptamos el “Escrito en Cumplimiento de Orden” presentado por la AC y procedemos a resolver con el beneficio de su comparecencia.
n
A
El Tribunal Supremo de Puerto Rico (TSPR) ha reiterado que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Esta deferencia se debe a que son éstos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que le son encomendados. Por ello, el criterio rector al revisar las determinaciones administrativas es la razonabilidad en la actuación de la agencia recurrida. Mun. de San Juan v. Plaza Las Américas, 169 D.P.R. 310, 323 (2006). Así, la revisión judicial debe limitarse a determinar si la agencia actuó arbitraria o ilegalmente o de manera tan irrazonable que su actuación constituyó un abuso de discreción. Camacho v. AAFET, 168 D.P.R. 66, 91 (2006). La intervención judicial en estos casos, ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba, y (3) si las conclusiones de derecho del organismo administrativo son correctas. See. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como “Ley de Procedimiento Administrativo Uniforme” (LPAU), 3 L.P.R.A. sec. 2175; P.R.T.C. v. J. Reg. Tel. de P. R., 151 D.P.R. 269, 281 (2000).
La norma reiterada es que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Polanco v. Cacique Motors, 165 D.P.R. 156, 170 (2005). La evidencia sustancial para sostener la actuación administrativa es aquella que una mente razonable puede aceptar como adecuada para sostener una conclusión. Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999).
En consecuencia, las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, por lo que el ejercicio de nuestra función revisora está limitado a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de *1042 discreción. Camacho v. AAFET, supra. Esto se cumple cuando se encuentra una base racional en el récord administrativo para sostener las conclusiones de la agencia. Id. Ahora bien, la deferencia no ha de ser impedimento para la revisión en aquellos casos donde la interpretación de la agencia menoscabe derechos fundamentales, sea irrazonable o conduzca a la comisión de injusticias. Costa, Piovanetti. v. Caguas Expressway, 149 D.P.R. 881, 889 (1999).
B
La Ley Núm. 5 del 14 de octubre de 1975, según enmendada, conocida como la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. see. 1301 et seq. (Ley de Personal del Servicio Público), vigente al momento de los hechos que ocasionaron el procedimiento disciplinario en contra del recurrente, [1] disponía en la sección 1336(8) que sería separado del servicio público todo empleado convicto por la comisión de delito grave o que implique depravación moral o infracción a los deberes oficiales. Así pues, la sección 1323 (d) de dicha ley expresaba:
“[S]e considerará como inelegible para ingresar o reingresar al servicio público o permanecer en él y no podrá ser habilitada para ocupar puestos públicos, por el término de veinte (20) años, contados a partir de la convicción, toda persona que haya sido convicta en la jurisdicción del Estado Libre Asociado de Puerto Rico, en la jurisdicción Federal o en cualquiera de los estados de los Estados Unidos de América, por cualesquiera de los delitos siguientes, cuando constituyan delito grave y se hayan cometido en el ejercicio de una función pública...”. 3 L.P.R.A. sec. 1323(d).
De forma similar, dicho estatuto disponía que los funcionarios públicos estaban impedidos de observar conducta incorrecta o lesiva al buen nombre de la agencia o al Gobierno de Puerto Rico. 3 L.P.R.A. see. 1371 (4). De no observarse la conducta requerida, la Ley de Personal del Servicio Público facultaba a la agencia para tomar medidas disciplinarias, específicamente expresaba:
“Cuando la conducta de un empleado no se ajuste a las normas establecidas, cada agencia deberá tomar las medidas correctivas necesarias. Entre otras medidas se podrán considerar la amonestación verbal, las reprimendas escritas, las suspensiones de empleo y sueldo, y las destituciones. Tanto las suspensiones de empleo y sueldo como las destituciones deberán notificarse por escrito a los empleados, indicando los fundamentos.” 3 L.P.R.A. see. 1336(3).
A su vez, el Código Político de 1902, según enmendado, dispone en su Artículo 208 que cuando un funcionario público sea sentenciado por delito grave o por cualquier delito que implique depravación moral, o infracción a sus deberes esenciales, su cargo quedará vacante inmediatamente. 3 L.P.R.A. see. 556. Sin embargo, esta inhabilidad para ocupar puestos públicos fue modificada por la Ley Núm. 70 del 20 de junio de 1963, 3 L.P.R.A. sec. 556a et seq. (Ley 70), permitiéndose el relevo de dicha inhabilidad para los casos en que se suspenda la ejecución de la sentencia y cuando se conceda libertad bajo palabra o libertad a prueba. 3 L.P.R. A. secs. 556a y 556b. Ahora bien, tal relevo está sujeto a lo que disponga el director de personal de cada agencia, luego de revisar cada caso por sus méritos, luego de tomar en cuenta la conducta y reputación general de la persona de quien se trate así como la naturaleza y funciones del puesto. (Énfasis suplido.) 3 L.P.R.A. sec. 556c. Asimismo, la propia Ley 70 señala que las personas relevadas de la inhabilidad para ocupar puesto públicos “estarán sujetas a las disposiciones legales y a las reglas y reglamentos que rijan o se apliquen a la administración de personal, en el Gobierno del Estado Libre Asociado de Puerto Rico, sus agencias, instrumentalidades, organismos, oficinas y subdivisiones políticas”. (Énfasis nuestro.) 3 L.P.R.A. sec. 556d.
Por lo tanto, como regla general, la convicción y sentencia por delito grave constituyen causa suficiente para la separación del cargo público que ocupa el empleado al momento de producirse la misma. A.E.E. v. U.T.I.E.R., 153 D.P.R. 623, 632 (2001), citando a Hernández Cruz v. Sria. de Instrucción, 117 D.P.R. 606, 614-615 *1043 (1986). Sin embargo, si al empleado que fue sentenciado se le conceden los beneficios de una sentencia suspendida, vía excepción establecida en la Ley 70, podrá continuar en el desempeño de su cargo hasta tanto el director de la oficina de personal disponga otra cosa, según los criterios que establece la mencionada ley. A.E.E. v. U.T.I.E.R., supra. Ahora bien, el TSPR añadió que dicha determinación no podrá basarse exclusivamente en la convicción del delito grave, “sino que deberá evaluar los méritos de cada caso, tomando en consideración la conducta y la reputación general de la persona que se trate, así como la naturaleza y las funciones del puesto”. (Énfasis nuestro.) A.E.E. v. U.T.I.E.R., supra.
C
La Ley Orgánica de la Administración de Corrección, Ley Núm. 116 del 22 de julio de 1974, según enmendada, 4 L.P.R.A. sec. 1101 et. seq. (Ley 116), creó la AC con el propósito de ofrecerle a nuestro sistema correccional, mecanismos y soluciones ajustados a la realidad puertorriqueña, para la implementación de una reforma en sus estructuras y programas. Exposición de Motivos de la Ley 116, 1974 Leyes de Puerto Rico 535. Dicha legislación, además, pretende maximizar la probabilidad de rehabilitación del delincuente y su pronta reintegración al núcleo familiar y a la comunidad. íd.
El Artículo 8 de la Ley 116, supra, estableció el cuerpo de oficiales correccionales al cual se le encomendó la responsabilidad de custodiar los confinados, conservar el orden y la disciplina en las instituciones correccionales, proteger a la persona y a la propiedad, supervisar y ofrecer orientación social a los confinados. 4 L.P.R.A. see. 1126. Además, la Ley 116, supra, concedió a los oficiales correccionales la facultad de realizar arrestos contra confinados evadidos y liberados contra quienes pesa una orden de arresto. íd.
De conformidad con lo anterior, la AC adoptó el Reglamento de Oficiales de Custodia de la Administración de Corrección, Reglamento Núm. 6326 del 29 de junio de 2001 (Reglamento 6326). [2] El mencionado Reglamento estableció las funciones, responsabilidades, derechos y normas aplicables a los oficiales de custodia. Específicamente, el Artículo XII, Inciso A, del Reglamento 6326 estableció las responsabilidades de los oficiales de custodia, mientras que el Inciso B dispuso el desempeño de sus funciones. [3] Por su parte, el Artículo XIII del Reglamento afirmaba que si un oficial de custodia incurría en violaciones al reglamento, estaría sujeto a medidas correctivas según recomendara el supervisor al Administrador de la AC o a las medidas disciplinarias que determinara el propio Administrador de la Administración de Corrección. A su vez, el Artículo XIV del Reglamento de Oficiales de la Administración de Corrección establecía los procedimientos administrativos y apelativos.
m
Por estar íntimamente relacionados, discutiremos de forma conjunta los señalamientos de error aducidos por el recurrente. En síntesis, sostiene que incidió la CIPA al confirmar su destitución e ignorar las disposiciones del Reglamento de Habilitación para el Servicio Público, Reglamento Núm. 5428, de 17 de mayo de 1996, de la Oficina Central de Administración de Personal (OCAP) y la Ley 70, supra, relacionadas a al relevo de inhabilidad de un empleado público para ocupar un puesto, cuando recibe el beneficio de una sentencia suspendida o de libertad a prueba. Alega que al recurrente acogerse al programa de desvío que establece la Ley 54, supra, le aplica la Ley 70, supra. Por consiguiente, aduce que la CIPA erró al dejar de resolver si la AC cumplió con su obligación de someter al recurrente al proceso de habilitación. Según el recurrente, el Director de OCAP, hoy ORHELA, debía determinar si aquel podía continuar desempeñando las labores del puesto de oficial de custodia. El recurrente sostiene que lo anterior violenta su derecho a un debido proceso de ley e ignora la posible imposición de una sanción menos drástica. No le asiste la razón.
Si bien es cierto que bajo la Ley 70, supra, toda persona a la que le sea suspendida la ejecución de una sentencia o le sea concedida la libertad bajo palabra, queda relevada de la inhabilidad para ocupar puestos públicos, no es menos cierto que cada agencia puede revisar cada caso por sus méritos y determinar “la habilitación o no habilitación" del empleado. Además, se deberá evaluar los méritos de cada caso, tomando en *1044 consideración “la conducta y la reputación general de la persona de que se trate, así como la naturaleza y las funciones del puesto”. (Énfasis suplido.) 3 L.P.R.A. sec. 556c.
Más importante aún, las personas relevadas de su inhabilidad para ocupar un puesto público están sujetas a las leyes, reglas y reglamentos sobre la administración de personal de las agencias gubernamentales. 3. L.P.R.A. sec. 556d. En el caso de la AC, ésta tiene el deber de asegurarse que sus oficiales de corrección son las personas idóneas y aptas para ejercer funciones revestidas de alta responsabilidad, al mantener el orden y la seguridad en las instituciones correccionales de la Isla. Es innegable, que los hechos admitidos por el recurrente son suficientes para que se iniciase un proceso disciplinario en su contra y que al determinarse que incurrió en una falta administrativa, dicho procedimiento culminase en la imposición de una sanción disciplinaria.
Asimismo, no cabe la menor duda, que ante los crueles y violentos actos cometidos por el recurrente, el Secretario de la AC tiene la facultad de imponerle la severa sanción de la expulsión. El recurrente no puede pretender que la aplicación aislada de un Reglamento y de la Ley 70, supra, prive a la AC de su poder para supervisar a sus empleados y aplicar sus reglamentos disciplinarios. El hecho de que el recurrente se acogiese a un programa de desvío que culminó con el archivo y sobreseimiento de su caso no significa que no haya incurrido en conducta altamente reprochable y prohibida, sujeta a un procedimiento disciplinario en el ámbito administrativo.
Por último, un oficial de corrección está en una posición muy similar a la de un oficial de la Policía. Feliciano Sambolín v. Administración de Corrección, res. el 3 de junio de 2009, 171 D.P.R._(2009), 2009 J.T.S. 96. En San Vicente v. Policía, 142 D.P.R. 1, 7 (1996), al expresarse sobre el despliegue de brutalidad y violencia por parte de un miembro de la Policía de Puerto Rico, el TSPR señaló: “[n]ada debe estar más lejos de un hombre de ley que el amago o recurso a la violencia que es la antítesis y negación del orden público. No debe (ser miembro de la Policía de Puerto Rico) quien padece estos accesos de regresión a lo primitivo.” (Énfasis nuestro.) (Cita omitida.)
A tenor de todo lo anterior, procede confirmar la Resolución recurrida, toda vez que el recurrente no ha logrado demostrar que la CIPA actuó de manera arbitraria o caprichosa.
IV
En mérito de todas las consideraciones antes expresadas, se confirma la Resolución recurrida.
Así lo acordó y ordena el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 49

. Fue derogada por la Ley Núm. 184 de 3 de agosto de 2004, conocida como la Ley para la Administración de Recursos Humanos en el Servicio Público del Estado (Ley de Personal), 3 L.P.R.A. secs. 1461 etseq.

. Vigente al momento de los hechos. Fue derogado por el Reglamento Núm. 7436 del 7de diciembre de 2007.

. En lo pertinente al caso de autos, al recurrente se le imputó la infracción de los incisos (B)(3), (e), (i) y (n) del Artículo XII del Reglamento 6326 que disponen lo siguiente:
“B. Acciones disciplinarias:
(3) Serán motivo de destitución, entre otras situaciones, las siguientes:
*1045 (d) observancia de una conducta desordenada, incorrecta o lesiva al buen nombre de la Administración de Corrección en las funciones de su empleo.
(e) prevaricación, soborno o conducta inmoral.
(i) incurrir en algún acto que resulte incompatible con las funciones de su puesto.
(n) convicción por delito menos grave cuando del mismo se evidencia conducta inmoral o impropia.”